CORSON VILLAGE SANITARY DISTRICT, A Political Subdivision of the State of South Dakota, Plaintiff and Appellee,

v.

Connie STROZDAS, also known as Connie Strozdas–Johnson, Individually and as Personal Representative of the Estate of Thomas Christopherson, Deceased, Defendant and Appellant.

No. 19100.

Supreme Court of South Dakota.

Considered on Briefs Oct. 16, 1995.

Decided Nov. 21, 1995.

Jerome B. Lammers of Lammers, Lammers, Kleibacker and Parent, Madison, for plaintiff and appellee.

David O. Carter, Sioux Falls, for defendant and appellant.

SABERS, Justice.

Connie Johnson appeals a jury award of $2,000 for the taking by eminent domain of 3.17 acres by the Corson Village Sanitary District.

## FACTS

Johnson owns property located east of Sioux Falls. The total property is 37.47 acres and includes an uninhabited farmstead. Johnson inherited the property from Thomas Christopherson.

The Village of Corson (Corson) formed a water association in 1959 and signed an easement agreement in 1963 with the property's former owner, Earl Christopherson. The easement was for 25 years with an option to extend for 25 years. It covered a corner of the Christopherson farm to be used for construction of a sewage lagoon. The lagoon was constructed in 1970. The easement expired in 1988 and was not renewed, but the Corson Water Association continued to operate the facility as a sewage lagoon.

The Corson Water Association did not have power to condemn property. Consequently, it formed the Corson Village Sanitary District (District) in June, 1993. The

District continued use of the lagoon and condemned 3.17 acres on which it is located.

A jury trial was scheduled for January 18, 1995. At a deposition taken January 5, 1995, Johnson's appraiser testified he had not determined the value of the property. Johnson requested a continuance on January 9, 1995 for additional time. The motion was denied. At trial, Johnson did not call an appraiser to testify. She testified and her attorney cross-examined witnesses for the District. The jury awarded Johnson $2,000 for the taking of her property and she appeals.

## 1. Does the Sanitary District have the power to condemn the facility?

■ The District is organized and operated under SDCL ch. 34A–5. The power to condemn is given to the District by SDCL 34A–5–30, which provides in part:

> The Board of trustees may construct and operate storm and sanitary sewers and sewage disposal plants, borrow money, levy taxes and special assessments and issue bonds ... *The board of trustees may exercise the power of eminent domain, but not over existing sewage facilities, water rights, water mains, hydrants, intakes, wells, storage tanks, reservoirs, treatment plants or any other water facilities.*

(Emphasis added.) Johnson claims that because the District seeks to take property on which it currently operates a lagoon, the cited language precludes the District's authority to condemn. The obvious intent of the legislature in adopting this language was to prevent a sanitary district from condemning sewage facilities operated by a competitor. This language would not apply to Johnson's situation as a private landowner with a lagoon constructed and operated by the District and its predecessor. The District has the power to condemn the subject property. SDCL 34A–5–30.

## 2. Did the trial court err in denying a continuance to get a new appraisal?

■ The trial court denied Johnson's request for a continuance to get a new appraisal. Johnson claims the appraiser had health problems which delayed his deposition and made him unable to complete the appraisal. The record does not show that the trial court was informed of these health problems. Johnson's motion for continuance states: "[T]he expert designated by Constance Johnson, namely George Schaefer, indicated in a recent deposition that he had not formulated an opinion on the value of the subject property." No affidavits were filed in connection with this motion.[1] Mr. Schaefer did not indicate any health problems at his deposition. His testimony was that he had not been asked to appraise the property for values before and after the taking. The motion hearing was held by telephone and no transcript was made. The first mention of the appraiser's health problems occurred during the trial when Johnson was asked if she had the property appraised. She responded, "Yes. I hired a man, and due to his health, heart problems, he was not able to be here."

■ The trial court found Johnson failed to comply with a scheduling order which required the parties to notify each other by August 1, 1994 to give the identity of expert witnesses and to exchange reports of those experts by August 5, 1994. Johnson sent a copy of her appraiser's report to opposing counsel on November 14, 1994. The appraiser was not deposed until January 5, 1995. She filed the motion requesting continuance on January 9, 1995, nine days before the scheduled trial. The trial court found that Johnson had the written appraisal two months prior to the deposition, which gave her ample opportunity to have obtained an additional appraisal or appraisals if she so desired. " 'A continuance may properly be denied when the party had ample time for preparation or the request for a continuance was not made until the last minute.' " *Fan-*

---

1. SDCL 15–11–6 provides in part:

All applications for continuance must be made by motion ... All such motions shall be in writing and accompanied by affidavits in support of the motion, which affidavits shall set forth with particularity the grounds and cause for such motion as well as the efforts of the party or the party's attorney to avoid such delay.

ning v. Iversen, 535 N.W.2d 770, 776 (S.D. 1995) (quoting Mid–Western Elec. v. DeWild Grant Reckert, 500 N.W.2d 250 (S.D.1993)). The trial court did not abuse its discretion in denying the motion.

### 3. Did the trial court err in directing a verdict on the issue of severance damages, in refusing to reopen and in denying a new trial?

■ The trial court determined Johnson had not established the value of her property and granted a motion for directed verdict on the issue of severance damages. Johnson claims the trial court erred in refusing to reopen so she could supplement her value testimony and in denying her motion for new trial on the same basis.

■ Johnson bears the burden of proving the value of her land. "In proving the diminution of value, the defendants must establish the fair market value of the land before condemnation." Basin Elec. Power Co-op, Inc. v. Cutler, 254 N.W.2d 143, 145 (S.D.1977).

> [G]reat latitude is allowed in the reception of evidence to prove the value of property in condemnation cases, and generally any relevant and material evidence, if competent under general rules of evidence, is admissible to prove market value. If the proffered evidence tends to aid the trier of fact in arriving at a conclusion on the issue of value and damage, it should be received.

Basin Elec. Power Co-op v. Poindexter, 305 N.W.2d 46, 48 (S.D.1981).

■ An owner may testify to the value of his or her property. Shaffer v. Honeywell, 249 N.W.2d 251, 258 (S.D.1976). Johnson testified that her opinion of the property's value was based on offers[2] but pointed out

that the presence of the lagoon and the possibility of flooding made a difference in the sale value of the property. She testified there was an odor emanating from the lagoon and toilet paper, dead fish and feces washed onto her land when the lagoon flooded each year.[3] She testified the land on which the lagoon sits would be worth $1,200 to $1,500 per acre as farmland. She testified that if she put crops on the surrounding land, it would be worth $500 per acre because of excessive moisture from the lagoon.[4] She considered the value of the five "prime" acres close to the road to be $20,000 per acre. It was unclear whether this value was before or after the condemnation.

The District's appraiser valued the "prime" five acres at $62,500 and the remaining acres at $450 per acre. He estimated the property was worth $77,100 before the condemnation and $75,600 after. He testified he did not think the lagoon affected the value of the remaining land because it is not "much different from a stock pond," and because a cattle feedlot existed on adjoining property. All of this testimony concerned the value of the property.

■ Johnson's property totaled 37.47 acres. The District condemned 3.17 acres. "The measure of damages in condemnation cases involving a partial taking is the difference between the fair market value of the unit before the taking and the fair market value of what remains after the taking." City of Sioux Falls v. Kelley, 513 N.W.2d 97, 103 (S.D.1994) (quoting State Highway Commission v. Hayes Estate, 82 S.D. 27, 34, 140 N.W.2d 680, 684 (1966) (emphasis original)). "[I]n applying this rule, severance damage to the remaining property is included in an award without being designated as such.

---

2. She did not have written offers, but told the jury that she had been present when Thomas Christopherson turned down offers for "hundreds of thousands, even millions" of dollars for the property, and that she had prospective buyers as well. These offers were all made while the lagoon was present on the property. Counsel for the District objected and the trial court ruled the offers could not be used as evidence of offers, but that Johnson could discuss them as foundation for her opinion as to the land's value.

3. Johnson denied the odor and waste could have come from a neighboring cattle feedlot.

4. Other residents of the area testified that they did not recall the lagoon flooding. Joe Sandoval, president of the District and the caretaker of the lagoon, testified that he remembered high water which "inundated" the lagoon cells only one time since 1987. "[D]etermining the credibility of the witnesses is the role of the factfinder." Mash v. Cutler, 488 N.W.2d 642, 653–54 (S.D. 1992).

The amount allowed for the property actually taken is not segregated from the damage to the remainder." *Id.* The jury was instructed to determine the amount of compensation for the property taken and that the evidence was insufficient to allow them to consider severance damages.

The District's appraiser testified that the difference in value before and after the taking was $1,500. Johnson received $2,000. While there was *some* evidence of severance damages, although speculative and in improper form, the trial court determined there was insufficient evidence. Johnson has not presented sufficient evidence to overcome the presumption of correctness of that ruling. We affirm the directed verdict.

We also affirm the denial of the motion for new trial because Johnson failed to show the trial court abused its discretion in denying the reopening or the continuance under these circumstances. We have considered Johnson's other arguments and have determined them to be without merit.

MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.