#26133-a-GAS

**2012 S.D. 30**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

MEADOWLAND APARTMENTS,                    Plaintiff and Appellee,

   v.

HEIDI SCHUMACHER,                         Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE WILLIAM J. SRSTKA, JR.
Judge

* * * *

GLENN J. BOOMSMA of
Breit Law Offices, PC
Sioux Falls, South Dakota                 Attorneys for plaintiff
                                        and appellee.


DOUGLAS P. CUMMINGS, JR.
East River Legal Services
Sioux Falls, South Dakota                 Attorneys for defendant
                                        and appellant.


* * * *

CONSIDERED ON BRIEFS
ON MARCH 19, 2012

OPINION FILED **04/25/12**

#26133

SEVERSON, Justice

[¶1.]        Heidi Schumacher signed a renewed lease with Meadowland Apartments (Meadowland).  Meadowland later filed an eviction action against Schumacher, alleging that she was in material non-compliance with the lease.  Schumacher moved for a continuance of the court trial, which the magistrate court denied.  At the conclusion of the court trial, the magistrate court found that Schumacher was a disabled person under the Fair Housing Amendments Act (FHAA), but that Meadowland had made reasonable accommodations for her disability.  The magistrate court also found that Schumacher's conduct constituted sufficient grounds for termination of the lease.  Schumacher appealed to the circuit court, which affirmed the decision of the magistrate court.  Schumacher now appeals to this Court, raising the following issues: (1) whether the magistrate court abused its discretion in denying Schumacher's motion for a continuance; (2) whether the magistrate court erred in considering evidence of incidents that occurred prior to the term of Schumacher's most recent lease with Meadowland; and (3) whether the magistrate court erred in finding that Meadowland provided reasonable accommodations for Schumacher's disability as required under the FHAA.  We affirm.

## BACKGROUND

[¶2.]        Meadowland is a 120-unit apartment complex in Sioux Falls, South Dakota.  Schumacher moved into Meadowland in 1999.  Schumacher's apartment was part of a federally subsidized project that was subject to the rules and regulations of the United States Department of Housing and Urban Development.

- 1 -

It is undisputed that Schumacher suffers from a mental illness entitling her to protection under the FHAA.

[¶3.] On September 2, 2010, Schumacher renewed her lease with Meadowland for a term that was to extend from October 1, 2010, through October 31, 2010. The lease was to continue on a month-to-month basis after October 31, 2010. Under the terms of the lease, Meadowland could not terminate the lease unless Schumacher violated certain specified conditions. One such condition was "material non-compliance" with the terms of the lease. "Material non-compliance" was defined to include:

> (1) one or more substantial violations of the lease; (2) repeated minor violations of the lease that (a) disrupt the livability of the project; (b) adversely affect the health or safety of any person or the right of any tenant to the quiet enjoyment to [sic] the leased premises and related project facilities . . . .

[¶4.] Meadowland served a notice to quit and vacate upon Schumacher on October 12, 2010, alleging that Schumacher failed to comply with the terms of the lease by engaging in the following conduct:

> (a) Disturbing or harassing other residents;
> (b) Having an unauthorized business on premises;
> (c) Not putting maintenance requests in writing;
> (d) Conducting illegal activities on the premises;
> (e) Causing damage/waste to the property;
> (f) Having a pet of any type without written consent from Management;
> (g) Washing pet items in washer and leaving pet hair inside;
> (h) Failure to provide proper veterinarian documentation of health of animal;
> (i) Failure to register animal with the city and license animal;
> (j) Failure to fill out required service animal agreement for Meadowland Apartments;
> (k) Failure to maintain apartment or common areas in a clean and sanitary condition; and
> (l) Excessive noise from [Schumacher's] apartment.

[¶5.] After Schumacher failed to surrender the apartment, Meadowland initiated an eviction action pursuant to SDCL 21-16-1. Schumacher initially retained William Blewett to represent her in the eviction action. Mr. Blewett served an answer on behalf of Schumacher on October 28, 2010. A trial was scheduled for November 18, 2010, before Magistrate Judge John Hinrichs.

[¶6.] On November 8, 2010, Mr. Blewett withdrew from the case. Douglas Cummings began representing Schumacher. On November 17, 2010, Mr. Cummings requested a continuance on the grounds that he lacked sufficient time to adequately prepare for trial. The magistrate court denied the motion for continuance.

[¶7.] During the court trial, Schumacher testified that she obtained a dog in the spring of 2010 upon her doctor's recommendation. After obtaining the dog, Schumacher left a copy of a doctor's note and other unspecified paperwork in the rent payment drop-box. The doctor's note was signed by Dr. Michael Olson and stated, "[Schumacher] would benefit from a pet companion on a physical and emotional basis."

[¶8.] Schumacher testified that about one or two weeks later, Tamera VanBockern informed her that she needed to complete additional paperwork. VanBockern is the community manager for Dominium Management Services, which provided property management services to Meadowland. VanBockern testified that the paperwork she requested from Schumacher included the dog's vaccination records and proof that it was licensed with the city. Schumacher did not provide this documentation to Meadowland. Instead, Schumacher testified

that she placed the dog in the care of her friends so that it would no longer live with her in the apartment.

[¶9.] On August 24, 2010, Meadowland provided Schumacher with a pet policy agreement, which she signed. On the agreement, Schumacher checked a box indicating that she did not have a dog. She testified that at the time she signed the pet policy agreement, the dog was not living with her.

[¶10.] Schumacher testified that at some point after she signed the pet policy agreement, the dog began living with her again. She did not inform Meadowland that the dog was living with her and did not request an accommodation. On October 5, 2010, an inspection of Schumacher's apartment was performed by VanBockern and her assistant, Lisa Hastings. VanBockern testified that when they walked into Schumacher's apartment, the smell of pet urine and feces was overwhelming. She observed several stains on the carpet. There was damage to the bedroom wall and scratches on the woodwork. The dog was kenneled, but barked constantly during the inspection.

[¶11.] VanBockern testified that the October 5, 2010, inspection was the first time she was able to confirm that Schumacher had a dog in the apartment. However, VanBockern testified that from March 2010 through October 2010, Meadowland received nine separate written complaints from apartment tenants regarding Schumacher. Schumacher objected to the admission of evidence concerning incidents that occurred prior to October 1, 2010, the date Schumacher's most recent lease with Meadowland began. The magistrate court allowed this

evidence to be presented as an offer of proof. It reserved ruling as to the ultimate admissibility of the evidence.

[¶12.]     Meadowland elicited testimony from several of the tenants who submitted written complaints regarding Schumacher. Among the tenants who testified during the trial was Lacy Gartamaker, who lived in an apartment on the floor above Schumacher. She testified that she noticed an overpowering urine smell coming from Schumacher's apartment beginning in May 2010. Another tenant, Kristy King, lived across the hall from Schumacher. She testified that the smell of animal urine and feces was overwhelming. She stated, "I've got a small crack above my door. It gets so overpowering it does come in my apartment at times."

[¶13.]     Several tenants testified that Schumacher let her dog run loose in the hallway of the apartment complex. Jill Johnson, who is visually impaired, lives in an apartment on the floor below Schumacher. She testified that Schumacher's dog jumped on her repeatedly and that Schumacher did not attempt to restrain the dog. Johnson also testified that the dog's barking was extremely disruptive. This testimony was corroborated by several other witnesses, including Shawna Carlson, who lives in a separate building of the Meadowland apartment complex. Carlson testified that Schumacher's dog barked constantly.

[¶14.]     At the conclusion of the trial, Schumacher argued that Meadowland failed to make a "reasonable accommodation" for her disability as required under the FHAA. 42 USC § 3604(f)(3)(B). The magistrate court rejected this argument and found that Meadowland had provided reasonable accommodations for

Schumacher's disability. The magistrate court went on to find that Meadowland could terminate the lease. In making this finding, the court did not expressly decide whether the evidence of Schumacher's conduct prior to October 1, 2010, was admissible. Instead, it stated that "enough of the conditions, including the bad odor and damage to [Schumacher's] apartment . . . were present in October." The magistrate court enjoined Schumacher from having a pet on Meadowland's property and ordered that Meadowland was entitled to possession of Schumacher's apartment on January 31, 2011. The circuit court affirmed the magistrate court's decision.

## DISCUSSION

[¶15.]    1.    **Whether the magistrate court abused its discretion in denying Schumacher's motion for a continuance.**

[¶16.]    Schumacher argues that the magistrate court's denial of her motion for continuance deprived her of due process because her counsel was unable to adequately prepare for the trial. We have stated, "The granting or refusal of a continuance is within the sound discretion of the circuit court, and its rulings will not be reversed absent a clear abuse of discretion." *People in Interest of E.D.J.*, 499 N.W.2d 130, 133 (S.D. 1993) (quoting *In re D.H.,* 408 N.W.2d 743, 746 (S.D. 1987); *In re C.J.H.*, 371 N.W.2d 345, 349 (S.D. 1985)). "The term 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Id.* (quoting *Gross v. Gross,* 355 N.W.2d 4, 7 (S.D. 1984)).

[¶17.]    "[A] party is entitled as a matter of right to a reasonable opportunity to secure evidence on his behalf." *Tosh v. Schwab*, 2007 S.D. 132, ¶ 25, 743 N.W.2d

422, 430 (quoting *State v. Moeller,* 2000 S.D. 122, ¶ 7, 616 N.W.2d 424, 431).  Thus,

"[i]f it appears that due diligence has failed to procure it, and where a manifest

injustice results from denial of the continuance, the trial court's action should be

set aside."  *Id.* (quoting *Moeller,* 2000 S.D. 122, ¶ 7, 616 N.W.2d at 431).  In

deciding whether to grant a continuance, a trial court must consider the following

factors:

> (1) whether the delay resulting from the continuance will be
> prejudicial to the opposing party; (2) whether the continuance
> motion was motivated by procrastination, bad planning, dilatory
> tactics or bad faith on the part of the moving party or his
> counsel; (3) the prejudice caused to the moving party by the trial
> court's refusal to grant the continuance; and (4) whether there
> have been any prior continuances or delays.

*Id.* (quoting *Moeller,* 2000 S.D. 122, ¶ 8, 616 N.W.2d at 431).

[¶18.]      In this case, there is no evidence that Schumacher's motion for

continuance was "motivated by procrastination, bad planning, dilatory tactics or

bad faith." *See id*.  There were also no prior continuances or delays in the trial.

However, the magistrate court found that delaying the trial would prejudice

Meadowland because Meadowland had already served subpoenas on seven

witnesses and arranged for the appearance of additional witnesses.  Several of the

subpoenaed witnesses informed Meadowland that they made special arrangements

with their employer to appear at the trial.  The magistrate court also noted that

Meadowland had incurred significant expenses and service fees.

[¶19.]      In contrast, the magistrate court found that the prejudice Schumacher

would suffer as a result of the court's refusal to grant the continuance was

minimal.  It is significant that Meadowland initiated this case as an unlawful

detainer action pursuant to SDCL chapter 21-16. "The primary concern in an unlawful detainer action is the question of immediate right to possession." *Heiser v. Rodway*, 247 N.W.2d 65, 67 (S.D. 1976) (citations omitted). Toward that end, SDCL 21-16-8 shortens the time period within which a trial may be commenced after the parties are notified of the trial. *Id.* at 70. SDCL 21-16-8 provides:

> An action under this chapter may be brought on for trial upon two days' notice after issue is joined. If a jury trial be demanded and no jury is in attendance on the day the action is noticed for trial, the court shall cause a special venire to issue as in cases where extra jurors are required, and proceed to impanel a jury and try the action as in other civil cases.

[¶20.] On November 2, 2010, counsel for Meadowland notified Schumacher's original counsel, Mr. Blewett, of the November 18, 2010, trial date. Counsel for Meadowland also contacted Mr. Cummings on November 2, 2010, and informed him of the trial date. Because Schumacher was given a reasonable opportunity to secure evidence on her behalf, we hold the magistrate court did not abuse its discretion in denying Schumacher's motion for continuance.

[¶21.] **2. Whether the magistrate court abused its discretion in considering evidence of incidents that occurred prior to October 1, 2010.**

[¶22.] The term of Schumacher's renewed lease with Meadowland was to extend from October 1, 2010, through October 31, 2010. Schumacher argues that the magistrate court erred in considering evidence of incidents that occurred prior to October 1, 2010. She argues that by signing a new lease with Schumacher for a term to begin on October 1, 2010, Meadowland condoned her previous behavior and, therefore, should be estopped from using that behavior as a basis for an eviction.

[¶23.] We find Schumacher's argument to be without merit. The record reveals that, on at least two separate occasions, Meadowland inquired as to whether Schumacher had a dog in the apartment. Schumacher indicated that she did not. Although Meadowland received complaints from other tenants, VanBockern testified that she was unable to confirm that Schumacher was keeping a dog in her apartment until October 5, 2010.[1] Under these facts, Meadowland cannot reasonably be said to have "condoned" Schumacher's conduct.

[¶24.] Nonetheless, Schumacher argues that evidence of her conduct prior to October 1, 2010, was irrelevant and that the magistrate court abused its discretion in allowing this evidence to be presented at trial. We review the evidentiary rulings of a trial court "under an abuse of discretion standard." *State v. Ralios*, 2010 S.D. 43, ¶ 38, 783 N.W.2d 647, 658 (quoting *State v. Fool Bull,* 2008 S.D. 11, ¶ 10, 745 N.W.2d 380, 385. "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *Id*. (quoting *State v. Shaw,* 2005 S.D. 105, ¶ 18, 705 N.W.2d 620, 625). "Any evidentiary errors by the trial court must be prejudicial in nature to warrant reversal on appeal." *Id*. (citing *Fool Bull,* 2008 S.D. 11, ¶ 14, 745 N.W.2d at 385). "Error is prejudicial when, in all probability, it produced some effect upon the final

---

1. During the court trial, VanBockern testified as follows:

> Q: Did there come a point in time in which you did learn for sure or for certain that she did have a dog?
> A: Yes.
> Q: When did you learn that?
> A: For sure when we saw it, when we went in to the unit inspections . . . on . . . the 5th of October.

result and affected rights of the party assigning it." *Id.* (citing *Fool Bull,* 2008 S.D. 11, ¶ 14, 745 N.W.2d at 385).

[¶25.] In addressing Schumacher's argument, we begin by noting that the magistrate court only allowed Meadowland to present evidence regarding Schumacher's conduct prior to October 1, 2010, as an offer of proof. The magistrate court explained,

> I'll decide after I've heard all of the evidence whether or not the things that are asserted to have occurred before October 1st are material. I may not have to make that decision if I conclude that the matters that are asserted to have occurred after October 1st are grounds to grant the relief in the Complaint.

[¶26.] In its decision letter, the magistrate court referred to evidence of events that took place prior to October 1, 2010, in order to show Schumacher's course of conduct. When considered for this purpose, we believe the evidence was relevant.[2] Indeed, Schumacher failed to notify Meadowland that she had a dog in her apartment. The magistrate court found, "some of the conditions caused by the presence of the dog were unnoticed by [Meadowland], because [Schumacher] failed to notify [Meadowland] of the presence of the dog for much of the summer and fall."

[¶27.] Ultimately, the magistrate court indicated that Schumacher's conduct after October 1, 2010, provided sufficient grounds for eviction. In its decision

---

2. The factual relevance of evidence is determined under SDCL 19-12-1 (Rule 401), which provides:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

letter, the magistrate court stated: "It is true that much of the evidence established that the unwelcome conditions created by the dog's presence occurred before the new lease. . . . However, enough of the conditions, including the bad odor and damage to [Schumacher's] apartment . . . were present in October." Thus, after reviewing the record in its entirety, we cannot conclude that the magistrate court abused its discretion.

[¶28.]     **3.     Whether the magistrate court erred in finding that Meadowland made reasonable accommodations for Schumacher's disability under the FHAA.**

[¶29.]     Schumacher argues that Meadowland failed to make reasonable accommodations for her disability as required under the FHAA. The FHAA makes it illegal "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person . . . ." 42 U.S.C. § 3604(f)(2)(A). Under 42 U.S.C. § 3604(f)(3)(B), discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . ."[3] *See Arnold Murray Const., L.L.C. v.*

---

3.     However, 42 U.S.C. § 3604 (f)(9) specifies, "Nothing in this subsection requires that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals . . . ." The magistrate court found that Schumacher's conduct did not constitute a "direct threat to the health or safety of other individuals." Therefore, the magistrate court concluded that 42 U.S.C. § 3604 (f)(9) did not relieve Meadowland of its obligation to provide a reasonable accommodation to Schumacher. Meadowland does not challenge the magistrate court's finding on this issue.

(continued . . .)

*Hicks*, 2001 S.D. 7, ¶¶ 8-10, 621 N.W.2d 171, 174-75 (discussing when a landlord's duty to provide reasonable accommodations arises).

[¶30.] To establish a cause of action for failure to accommodate under 42 U.S.C. § 3604(f)(3)(B), a plaintiff must show that "(1) [she] is disabled or handicapped within the meaning of the [Fair Housing Act], (2) [she] requested a reasonable accommodation, (3) such accommodation was necessary to afford [her] an opportunity to use and enjoy [her] dwelling, and (4) the defendant[] refused to make the requested accommodation." *Hawn v. Shoreline Towers Phase I Condo. Assoc., Inc.,* 347 F. Appx. 464, 467 (11th Cir. 2009) (citation omitted). In this case, Schumacher has failed to show that she "requested a reasonable accommodation," or that Meadowland "refused to make the requested accommodation." *See Wallace H. Campbell & Co., Inc. v. Md. Comm'n on Hum. Rel.*, 33 A.3d 1042, 1053 (Md. App. 2011) (noting that "federal courts have consistently interpreted 42 U.S.C. § 3604(f)(3)(B) to require a prior request"); *Groteboer v. Eyota Econ. Dev. Auth.*, 724 F. Supp. 2d 1018, 1024 (D. Minn. 2010) (recognizing that to prevail on a claim for failure to make a reasonable accommodation under the FHAA, a plaintiff must show that he or she requested an accommodation that was "reasonable on its face").

_____

(. . . continued)

It is important to emphasize that although the magistrate court found that Schumacher's conduct did not constitute a "direct threat to the health or safety of other individuals," the magistrate court did find that Schumacher's conduct constituted "material non-compliance" with the lease, thus justifying Meadowland's termination of the lease. The magistrate court also found that Meadowland had made reasonable accommodations for Schumacher's disability.

[¶31.]	During the court trial, Schumacher testified that when she obtained a dog in the spring of 2010, she left a copy of her doctor's note and other unspecified paperwork in the rent payment drop-box. Meadowland then requested that Schumacher produce the dog's vaccination records and proof that it was licensed with the city. Instead of providing Meadowland with the requested documentation, Schumacher signed a form indicating that she did not own a dog. After signing this form in August 2010, it is undisputed that Schumacher did not request permission from Meadowland to have a dog in the apartment. Nor did Schumacher inform Meadowland when the dog began staying in her apartment again.

[¶32.]	As the District of Columbia Court of Appeals has recognized, "a landlord is only obligated to provide a reasonable accommodation" to a tenant "if a request for the accommodation has been made." *Douglas v. Kriegsfeld Corp.,* 884 A.2d 1109, 1122 (D.C. 2005) (quotation omitted); *see Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1219 (11th Cir. 2008) (holding that "a plaintiff must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the [Fair Housing Act]," and the failure to do so is normally "fatal to the claim."). There is no evidence in the record to support Schumacher's assertion that she requested a reasonable accommodation, or that Meadowland denied such a request. To the contrary, the record indicates that Meadowland made contact with Schumacher on at least two separate occasions and attempted to obtain information from her so that reasonable accommodations could be made. Schumacher refused to cooperate with Meadowland and denied that she

even owned a dog.  When viewed in its entirety, the record supports the magistrate court's findings of fact.  The magistrate court did not err in denying Schumacher relief under the FHAA.

[¶33.] Affirmed.

[¶34.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and WILBUR, Justices, concur.