#31167-a-SPM
**2026 S.D. 17**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

KELLY ANDERSON,                                          Plaintiff and Appellant,

　　v.

DAVID STREETER,                                          Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
FALL RIVER COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBERT GUSINSKY
Judge

* * * *

ERIC M. SCHLIMGEN
JOHN SPARKS, Legal Intern of
Schlimgen Law Firm, LLC
Spearfish, South Dakota                          Attorneys for plaintiff and
                                                 appellant.


MATTHEW HAYS MCCOY
Custer, South Dakota

J. SCOTT JAMES of
Southern Hills Law, PLLC
Custer, South Dakota                             Attorneys for defendant and
                                                 appellee.

* * * *

CONSIDERED ON BRIEFS
FEBRUARY 11, 2026
OPINION FILED **03/11/26**

MYREN, Justice

[¶1.] David Streeter shot Kelly Anderson in the chest after Anderson confronted him at his home. Anderson filed a civil lawsuit against Streeter. Streeter moved to dismiss, claiming that he acted in self-defense and was immune from civil liability under SDCL 22-18-4.8. Anderson requested a continuance of the immunity hearing, contending he needed additional time to obtain and review a transcript of grand jury proceedings related to Streeter's conduct on the day of the shooting. The circuit court determined the grand jury transcript was inadmissible and denied Anderson's motion for a continuance. After conducting the immunity hearing, the circuit court concluded that Streeter was justified in exercising deadly force in self-defense under SDCL 22-18-4.1 and was immune from civil liability under SDCL 22-18-4.8. Anderson appeals. We affirm.

## Factual and Procedural Background

[¶2.] Vivos xPoint Investment Group, LLC (Vivos) is a community of decommissioned military bunkers located outside of Edgemont. In July 2023, Streeter purchased a bunker and began preparations to move in with his family. After moving into the bunker, Streeter began having problems with the people who managed the Vivos community. He testified that after reporting problems with his septic system to Vivos management, Vivos employees were continually "circling my bunker and facing my bunker and actively filming us" as retaliation for making the complaint. Streeter also testified that Vivos employees were frequently "flipping us off. Just making signs with their - - with their hands as they're driving by, things of that nature, speeding up and down the road" and making lewd gestures in front of

Streeter's wife. Streeter testified that this behavior by Vivos employees continued for months. Streeter contacted law enforcement about these issues, but the conduct continued.

[¶3.] Streeter testified that on August 23, 2024, J.R. Rodriguez, a Vivos employee, sped by Streeter's bunker at a high rate of speed. Because Streeter's prior attempts to involve law enforcement had not succeeded, he decided to take the initiative. Streeter got in his vehicle and followed Rodriguez. Streeter caught up to Rodriguez, opened the door on his vehicle, put his "hand on [Rodriguez's] chest, [and] pushed him into his seat." Streeter explained that he told Rodriguez that he was tired of Vivos employees speeding past his bunker.

[¶4.] Roughly forty-five minutes after Streeter's confrontation with Rodriguez, Rodriguez and another Vivos employee, Tom Dundas, drove to Streeter's property. Dundas explained to Streeter that Vivos employees were working on a road near Streeter's bunker. Streeter demanded that Vivos employees stop driving by his bunker at high speed. Although highly charged, this confrontation did not escalate into physical violence.

[¶5.] Dundas and Rodriguez returned to their worksite and told Anderson about their interactions with Streeter. Anderson became upset with Streeter's behavior and decided to confront Streeter himself. Anderson sent a series of text messages to Chris Yellow Thunder, a mutual acquaintance of Streeter and Anderson, describing his intentions. The text message exchange, which was admitted at the immunity hearing, read as follows:

> Anderson: I'm about to fuck his ass up.

| | |
|---|---|
| Anderson: | I have[n't] said anything about this to any one but you. |
| Anderson: | You might want to come down to Streeter's. |
| Yellow Thunder: | Dave is my guy Kelly… beef needs to go away… I'm coming down. |
| Anderson: | I'm sorry. |
| Anderson: | I'm almost there. |
| Anderson: | What he did isn't right. |
| Anderson: | And I'm gonna educate this mother fucker. |

[¶6.] After this exchange with Anderson, Yellow Thunder called Streeter, told him what Anderson had said, and began driving to Streeter's bunker. Streeter received Yellow Thunder's warning roughly forty-five minutes after his confrontation with Dundas and Rodriguez. Streeter heard a vehicle coming while he was on the phone with Yellow Thunder. Anderson arrived in a skid steer, which he drove to the edge of Streeter's property. Anderson began yelling threats at Streeter from the roadway in front of Streeter's bunker.[1] In response, Streeter drew his handgun and pointed it at Anderson.[2]

[¶7.] Streeter warned Anderson to leave the premises several times. Anderson asked Streeter, "Have you ever killed someone?" After Streeter responded that he had, Anderson stated that he had killed somebody "with his bare

---

1. A video of the confrontation and shooting was admitted into the record. In the circuit court's written findings of fact and conclusions of law, it explained that it "found the video especially probative in assessing the facts."

2. Streeter testified that, as a former law enforcement officer, he always carries a firearm on his person.

hands." Streeter testified that based on Anderson's words and actions, he "was in fear for myself, for my daughters, and for all of my grandkids." Streeter explained that "[a]t that point in time he advances towards me and yells 'I'm here for you, Streeter,' something to that effect on film, and then he came at the fence and that's when I engaged him." Streeter later explained, "When he started to and advance and yelled whatever he yelled there, as - - his body posture changed, his facial expression changed, his - - everything about him at that point in time was a credible threat to me through my training, was a credible threat that he was going to harm me and harm my family, so I engaged him at that point in time."

[¶8.] Streeter shot Anderson once in the chest. Streeter testified that he fired as Anderson advanced, and they were only a foot or so apart. He testified that he did not believe the fence around his property diminished the threat Anderson posed because "the fence is only four foot high." Streeter estimated that nearly an hour and a half had passed between his initial confrontation with Rodriguez and Anderson's arrival at his bunker.

[¶9.] After shooting Anderson, Streeter kept his handgun pointed at Anderson and instructed his daughter to notify law enforcement and to grab a "medical bag." After Anderson became immobilized, Streeter, an emergency medical technician, rendered medical aid by placing compression on the wound to control the bleeding. Streeter and Yellow Thunder loaded Anderson into Yellow Thunder's pickup and transported him part of the way to town to meet the ambulance. Streeter continued to render assistance as Anderson was transferred to the ambulance. Anderson survived the gunshot.

[¶10.] In September 2024, a grand jury was empaneled in Fall River County to determine whether Streeter should be criminally charged for his conduct on August 23. The grand jury charged Streeter with simple assault, based on his initial interaction with Rodriguez (*See* ¶ 3), but it did not bring any charges related to Streeter's shooting of Anderson.

[¶11.] In October 2024, Anderson filed this civil lawsuit, claiming Streeter was liable for assault and battery. Streeter answered and moved to dismiss, asserting that he was immune from civil liability under SDCL 22-18-4.8 because he was acting in self-defense and was justified in using deadly force. After Streeter answered, Anderson served discovery requests. Streeter did not respond to these requests. Instead, he filed a separate motion to dismiss, again asserting immunity from civil liability under SDCL 22-18-4.8. In his motion to dismiss, Streeter requested that the circuit court "[s]tay all discovery pending resolution of this motion." Anderson opposed Streeter's requests and filed a response. Streeter then filed a reply, which cited a transcript of the grand jury proceedings. Because Streeter did not respond to Anderson's discovery requests, Anderson filed a motion "to deem requests for admissions admitted." Streeter opposed Anderson's motion, citing the prayer for relief in his motion to dismiss.

[¶12.] In early March 2025, the circuit court held a hearing on the outstanding motions. It denied Anderson's motion to have his requests for admission deemed admitted, granted Streeter's request for an immunity hearing, and denied Streeter's motion to stay discovery (but limited discovery to the issue of

civil immunity). The circuit court scheduled the immunity hearing for May 19, 2025, and gave the parties sixty days to complete their immunity-related discovery.

[¶13.] On May 16, Anderson filed a motion "to address pre-evidentiary hearing matters," and a motion for a continuance. In both motions, Anderson made various requests related to the grand jury transcript that Streeter had previously cited. Anderson requested:

> (A) Defendant immediately provide all exhibits referenced in the pleadings; (B) Plaintiff have access with immunity of any statutory violation to view the [grand jury transcript] in preparation of the Evidentiary Hearing; (C) Defendant answer how it obtained the [grand jury transcript] initially; and (D) Defendant be barred from utilizing the [grand jury transcript] for impeachment or any other purpose in this proceeding.

In Anderson's motion for a continuance, he requested that, instead of conducting the immunity hearing on May 19, the circuit court should hold a telephonic hearing limited to the issues he raised concerning the grand jury transcript.

[¶14.] The circuit court held the immunity hearing on the scheduled date and addressed Anderson's motions at the outset. The circuit court inquired why Anderson's counsel waited until days before the immunity hearing to raise issues regarding the grand jury transcript. Anderson's counsel admitted: "I waited in preparation for this proceeding and admittedly, I apologize to the [c]ourt for that delay, I did not immediately start preparing for this hearing after the last hearing, and I waited to start preparing and I admit to the [c]ourt that that was delay on my part." After concluding its discussion about the grand jury proceedings with both parties, the circuit court ruled that the grand jury transcript was inadmissible and

stated that it would not rely on it when assessing Streeter's self-defense immunity claims. The circuit court then denied Anderson's request for a continuance.

[¶15.] At the end of the immunity hearing, the circuit court concluded that Streeter was justified in using deadly force in self-defense under SDCL 22-18-4.1 and was immune from civil liability under SDCL 22-18-4.8. It later entered written findings of fact and conclusions of law. Anderson appeals.

## Decision

### 1. Whether the circuit court abused its discretion when it denied Anderson's motion for a continuance.

[¶16.] Anderson claims the circuit court abused its discretion in denying his motion for a continuance. He contends that the immunity hearing should have been continued because he did not have the opportunity to view the entire grand jury transcript. He claims a continuance would have prejudiced neither party, that he did not delay in bringing the motion, and that he was prejudiced by the circuit court's denial because there was potentially "impeachment testimony, additional witnesses, or other valuable informat[ion]" in the grand jury transcript.

[¶17.] "A trial court's decision to grant or deny a continuance is reviewed under an abuse of discretion standard." *VOR, Inc. v. Est. of O'Farrell*, 2025 S.D. 2, ¶ 35, 17 N.W.3d 252, 261 (quoting *People ex rel. L.N.*, 2022 S.D. 8, ¶ 41, 970 N.W.2d 531, 544). "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary and unreasonable.'" *Melius v. Songer*, 2025 S.D. 51, ¶ 52, 25 N.W.3d 801, 817 (quoting *Hiller v. Hiller*, 2018 S.D. 74, ¶ 19, 919 N.W.2d 548, 554). "The granting or refusing [of] a continuance rests in the sound discretion of the court

below, and its ruling will not be reversed, except for the most cogent reasons."

*VOR, Inc.*, 2025 S.D. 2, ¶ 35, 17 N.W.3d at 261 (alteration in original) (citation

omitted).

[¶18.] This Court has established four considerations that may guide a circuit

court's assessment of a motion for a continuance:

> (1) whether the delay resulting from the continuance will be
> prejudicial to the opposing party; (2) whether the continuance
> motion was motivated by procrastination, bad planning, dilatory
> tactics or bad faith on the part of the moving party or his
> counsel; (3) the prejudice caused to the moving party by the trial
> court's refusal to grant the continuance; and (4) whether there
> have been any prior continuances or delays.

*Id.* ¶ 36 (quoting *Meadowland Apartments v. Schumacher*, 2012 S.D. 30, ¶ 17, 813

N.W.2d 618, 623).

[¶19.] The immunity hearing was scheduled for May 19, 2025, a Monday.

Anderson filed his motion on May 16, 2025, the prior Friday. Anderson's counsel

knew the grand jury transcripts existed well before the time he filed his motion for

a continuance. As Anderson's counsel candidly admitted, "I waited in preparation

for this proceeding and admittedly, I apologize to the [c]ourt for that delay, I did not

immediately start preparing for this hearing after the last hearing and I waited to

start preparing and I admit to the [c]ourt that that was delay on my part." Based

on the timing of Anderson's submissions and his counsel's admissions to the circuit

court, Anderson's counsel did not properly utilize the time the circuit court afforded

him to prepare for the immunity hearing, and the motion for the continuance was

an attempt to remedy his poor planning. *See State v. Moeller*, 2000 S.D. 122, ¶ 7,

616 N.W.2d 424, 431 ("A continuance may properly be denied when the party had

ample time for preparation or the request for a continuance was not made until the last minute." (quoting *Corson Vill. Sanitary Dist. v. Strozdas*, 539 N.W.2d 876, 878 (S.D. 1995))).

[¶20.] Anderson's counsel had sixty days to conduct discovery and to discern whether the grand jury transcript contained the type of information he suggested. He did not avail himself of that opportunity. At Anderson's request, the circuit court ruled that the grand jury transcript was inadmissible and prohibited Streeter from relying on it during the immunity hearing because Streeter did not provide the transcript in response to Anderson's discovery request.[3] Given these circumstances, the circuit court did not abuse its discretion when it denied Anderson's request for a continuance.

> **2.** **Whether the circuit court erred when it concluded Streeter was immune from civil liability under SDCL 22-18-4.8.**

[¶21.] This Court reviews a circuit court's application of SDCL 22-18-4.8 de novo. *State v. Tuopeh*, 2025 S.D. 16, ¶ 49, 19 N.W.3d 37, 55. A circuit court's factual findings "are reviewed under the clearly erroneous standard." *Id.* (quoting *State v. Heney*, 2013 S.D. 77, ¶ 8, 839 N.W.2d 558, 561–62).

[¶22.] For a defendant to avail himself of the immunity described in SDCL 22-18-4.8, he must first make a prima facie showing under SDCL 22-18-4.1. That statute provides:

> A person is justified in using or threatening to use deadly force if the person reasonably believes that using or threatening to use

---

3. Given the circuit court's ruling, whether the use of the grand jury transcript in this civil proceeding complies with SDCL 23A-5-16 is not at issue in this appeal.

> deadly force is necessary to prevent imminent death or great bodily harm to himself, herself, or another, or to prevent the imminent commission of a forcible felony.
> A person who uses or threatens to use deadly force in accordance with this section does not have a duty to retreat and has the right to stand his or her ground, if the person using or threatening to use the deadly force is:
> (1) Not engaged in a criminal activity; and
> (2) In a place where the person has a right to be.

SDCL 22-18-4.1. After the defendant makes his prima facie showing, the burden shifts to the plaintiff to present clear and convincing evidence rebutting the defendant's self-defense claim. SDCL 22-18-4.8. If the plaintiff fails to present such clear and convincing evidence, the defendant is justified in his use of deadly force and "is immune from . . . civil liability." *Id.*

[¶23.] The circuit court heard Streeter's testimony and found him credible. *See News Am. Mktg. v. Schoon*, 2022 S.D. 79, ¶ 32, 984 N.W.2d 127, 137 ("Determining the credibility of the witnesses is the role of the factfinder," and this Court gives "[d]ue regard . . . to the opportunity of the [circuit court] to judge the credibility of the witness." (citations omitted)). That testimony established that Anderson notified Yellow Thunder via text message that he intended to attack Streeter physically. Yellow Thunder relayed Anderson's threats to Streeter. Anderson confirmed his aggressive intentions when he began yelling threats upon his arrival at Streeter's home. Anderson then boasted that he had killed somebody "with his bare hands." After making these threats, Anderson lunged toward Streeter, who responded to the threat with a single shot. Anderson did not present any witnesses or other evidence to controvert Streeter's testimony and evidence.

[¶24.]      Streeter made a prima facie showing of lawful self-defense under SDCL 22-18-4.1, which Anderson did not rebut with clear and convincing evidence. Based on the evidence presented, the circuit court did not err when it found that Anderson's verbal threats, in conjunction with his act of lunging toward Streeter, would cause a reasonable person to fear for their life. Nor did the circuit court err when it concluded, on this basis, that Streeter reasonably believed that deadly force was necessary to prevent great bodily harm.

[¶25.]      Anderson contends that Streeter had a duty to retreat because he "was previously engaged in criminal activity, i.e., assault of [Rodriguez]." The circuit court correctly concluded otherwise. SDCL 22-18-4.1(1) and -4.1(2) provide that a person who uses deadly force has no duty to retreat and may stand their ground if they are "[n]ot engaged in a criminal activity" and are "[i]n a place where the person has a right to be." Streeter's assault of Rodriguez occurred roughly an hour and a half before his use of deadly force against Anderson. As the circuit court noted, Streeter "was in a place where he had the right to be—within the perimeter of his own dwelling—and was not engaged in criminal activity at the time of the shooting."

[¶26.]      The circuit court's factual findings are not clearly erroneous, and it correctly applied the statutory framework in SDCL 22-18-4.1 and -4.8. We affirm its conclusion that Streeter was justified in using deadly force in self-defense under SDCL 22-18-4.1 and that he was immune from civil liability under SDCL 22-18-4.8.

#31167

*Appellate attorney fees*

[¶27.]     In his appellate brief, Streeter requests appellate attorney fees.  Under SDCL 15-26A-87.3, appellate attorney fees may be awarded "where such fees may be allowable."  Because SDCL 22-18-4.8 allows attorney fees at the circuit court level, appellate attorney fees are also awardable by this Court.  Streeter requested appellate attorney fees in his appellate brief.  However, he has not submitted a motion or a "verified, itemized statement of legal services rendered," as required by SDCL 15-26A-87.3(1).

[¶28.]     JENSEN, Chief Justice, and SALTER and DEVANEY, Justices, and KLINGER, Circuit Court Judge, concur.

[¶29.]     KLINGER, Circuit Court Judge, sitting for GUSINSKY, Justice, who deemed himself disqualified and did not participate.