#26624-a-DG

**2013 S.D. 77**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

PETER OWEN HENEY,                         Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RANDALL L. MACY
Judge

* * * *

MARTY J. JACKLEY
Attorney General

KELLY MARNETTE
Assistant Attorney General
Sioux Falls, South Dakota                 Attorneys for plaintiff
                                      and appellee.


MATTHEW J. KINNEY
Rapid City, South Dakota                  Attorney for defendant
                                      and appellant.


* * * *

CONSIDERED ON BRIEFS
ON SEPTEMBER 30, 2013

OPINION FILED **10/30/13**

#26624

GILBERTSON, Chief Justice

[¶1.]	Defendant Peter Heney was arrested and charged with possession of cocaine, possession of marijuana, and ingestion of marijuana.  Before trial, Heney moved to suppress all evidence in the case as the fruit of an initial illegal search of his hotel room, alleging that all evidence discovered by police on a subsequent call to the hotel was tainted by the initial illegal search.  The trial court granted the motion with respect to the drugs seized during the initial illegal search, but denied the motion with respect to evidence gathered during the second call to the hotel.  Heney was convicted on all charges.  Heney appeals these convictions, claiming that the trial court erred by denying his motion to suppress evidence.  We affirm.

**Facts and Procedural History**

[¶2.]	On August 10, 2012, at 12:30 p.m., Officer Jim Olson of the Deadwood Police Department responded to a call from the staff of the Mineral Palace Hotel.  Officer Olson was informed that the staff had detected the smell of marijuana in the second-floor hallway.  One of the maids at the hotel reported to Officer Olson that she had found a marijuana cigarette earlier that day in room 212.  The maid escorted Officer Olson to room 212.  On the way to room 212, Officer Olson first noticed the smell of marijuana smoke on the first floor in the elevator.  The smell became stronger on the second floor.  At room 212, Officer Olson knocked on the door but received no response.  Officer Olson then had the maid open the door to the room.  The maid complied, and then showed Officer Olson the half-smoked marijuana cigarette she had found earlier that day.  Officer Olson recognized the cigarette as marijuana and collected it as evidence.  Hotel management advised

-1-

Officer Olson that room 212 was rented by Heney. Heney was not at the hotel at the time, so Officer Olson requested the hotel staff notify him when Heney returned.

[¶3.] Deadwood Police received another call from hotel staff at approximately 3:35 p.m., reporting that Heney had returned and that there was now a strong smell of marijuana coming from room 208. Officer Olson returned to the hotel, where he found the strongest odor emanating from room 208. Officer Olson knocked on the door of room 208 and the door was answered by Michelle Bogin-Dell.[1] Officer Olson informed Bogin-Dell that there was a complaint about someone smoking marijuana in one of the rooms, and the odor of marijuana in the hallway. Officer Olson did not mention his earlier visit to the hotel or finding the marijuana cigarette. Officer Olson advised Bogin-Dell that he believed the smell was strongest coming from the door to her room. Officer Olson then asked if he could enter her room. Bogin-Dell consented, and Officer Olson entered the room to talk with the other occupants of the room. Four other persons were inside the room at the time.

[¶4.] Officer Olson explained why he was at the room, and then asked if anyone in the room had any marijuana. A male, later identified as Heney, stood up and told Officer Olson that he had marijuana. Heney presented Officer Olson with a medical marijuana prescription from California and a cigarette box containing several marijuana cigarettes, which Heney was carrying in his shirt pocket. Officer Olson informed Heney that South Dakota does not recognize medical marijuana

---

1. It was later discovered that room 208 was registered to Bogin-Dell.

prescriptions and that possession of marijuana was a crime in South Dakota. When asked if anyone else in the room was smoking, Heney indicated that he was the only person in the room smoking marijuana.

[¶5.]    Officer Olson placed Heney under arrest for possession and ingestion of marijuana. Heney then led Officer Olson to the room registered under Heney's name, where Heney allowed Officer Olson to inspect Heney's luggage. Officer Olson identified this as the same room in which the half-smoked marijuana cigarette was located earlier in the day. Before placing Heney in the patrol car, Officer Olson asked Heney if there was anything else on Heney's person that would get Heney in trouble when he got to the jail. Heney indicated that he had a small vial of cocaine in the top coin pocket of his jeans. Officer Olson located the vial and took it into evidence. At the jail, Heney gave a urine sample. The sample tested positive for marijuana and cocaine.

[¶6.]    Heney was charged with Possession of a Controlled Substance (Cocaine), a Class 4 felony, in violation of SDCL 22-42-5; Possession of Marijuana (Less than two (2) ounces), a Class 1 misdemeanor, in violation of SDCL 22-42-6; and Ingesting, a Class 1 misdemeanor, in violation of SDCL 22-42-15. Heney entered a plea of not guilty at his arraignment on September 6, 2012. Heney subsequently filed a Motion to Suppress Evidence and the court conducted a motion hearing on October 24, 2012. The only witness was Officer Olson.

[¶7.]    On November 29, 2012, the court entered an oral decision denying Heney's motion, in part. The trial judge suppressed evidence of the half-smoked marijuana cigarette found in Heney's room. The trial judge denied the motion with

regards to Heney's statements to police, the marijuana handed over to Officer Olson by Heney in room 208, as well as the cocaine on Heney's person. A bench trial commenced the same day by stipulated facts and the court found Heney guilty on all charges. Heney appeals his conviction, raising one issue for our review: Whether the challenged evidence in this case was tainted by a previous illegal search so as to necessitate exclusion under the fruit of the poisonous tree doctrine.

### Standard of Review

[¶8.] "A motion to suppress for an alleged violation of a constitutionally protected right raises a question of law, requiring de novo review." *State v. Hess*, 2004 S.D. 60, ¶ 9, 680 N.W.2d 314, 319 (citation omitted). Factual findings of the lower court are reviewed under the clearly erroneous standard, but once those facts have been determined, "the application of a legal standard to those facts is a question of law reviewed de novo." *Id.* (citation omitted).

### Analysis and Decision

[¶9.] "[T]he exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search, and of testimony concerning knowledge acquired during an unlawful search." *State v. Boll*, 2002 S.D. 114, ¶ 19, 651 N.W.2d 710, 716 (quoting *Murray v. United States*, 487 U.S. 533, 536, 108 S. Ct. 2529, 2533, 101 L. Ed. 2d 472 (1988)). "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" *Segura v. United States*, 468 U.S. 796, 804, 104 S. Ct. 3380, 3385, 82 L. Ed. 2d 599 (1984) (citations omitted). However, "[e]ven *Wong Sun*, the

progenitor of the 'fruit of the poisonous tree' doctrine, recognized that original lawless conduct would not taint all evidence forever." *Satter v. Solem*, 458 N.W.2d 762, 768 (S.D. 1990). Application of the exclusionary rule should strike a balance between "the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime[.]" *See Nix v. Williams*, 467 U.S. 431, 443, 104 S. Ct. 2501, 2509, 81 L. Ed. 2d 377 (1984).

[¶10.]    On appeal, the parties do not dispute the illegality of the initial search in room 212, or the trial court's suppression of evidence found in room 212 during that initial search. However, Heney argues that the trial court erred when it denied the motion to suppress with regards to the evidence obtained during Officer Olson's second trip to the Mineral Palace Hotel. Heney argues that the illegal entry into room 212 so tainted all subsequent evidence that all subsequent evidence should be excluded as fruit of the poison tree.

[¶11.]    "It is well settled that the burden is on the one making the motion to suppress evidence to establish that such evidence was illegally seized." *State v. Rigsbee*, 89 S.D. 360, 376, 233 N.W.2d 312, 321 (1975) (citation omitted).[2] "When the issue is whether challenged evidence is the fruit of a Fourth Amendment violation, the defendant bears the initial burden of establishing the factual nexus between the constitutional violation and the challenged evidence." *United States v.*

---

2.    Note, however, that the State bears the initial burden of proving that any warrantless search meets an exception to the warrant requirement. *State v. Labine*, 2007 S.D. 48, ¶ 14, 733 N.W.2d 265, 269. Also, once the defendant has carried the burden of proving that the challenged evidence is the fruit of the poisonous tree, the burden again shifts to the government to ultimately "show that its evidence is untainted." *See Alderman v. United States*, 394 U.S. 165, 183, 89 S. Ct. 961, 972, 22 L. Ed. 2d 176 (1969).

*Marasco*, 487 F.3d 543, 547 (8th Cir. 2007) (citing *Alderman*, 394 U.S. at 183, 89 S. Ct. at 972). "Suppression is not justified unless 'the challenged evidence is in some sense the product of illegal governmental activity.'" *Segura*, 468 U.S. at 815, 104 S. Ct. at 3391 (quoting *United States v. Crews*, 445 U.S. 463, 471, 100 S. Ct. 1244, 1250, 63 L. Ed. 2d 537 (1980).

[¶12.]      The challenged evidence should not be excluded as fruit of the poisonous tree "unless the illegality is at least the 'but for' cause of the discovery of the evidence." *Id.* It should be noted that "but-for causality is only a necessary, not a sufficient, condition for suppression" under the fruit of the poisonous tree doctrine. *Hudson v. Michigan*, 547 U.S. 586, 592, 126 S. Ct. 2159, 2164, 165 L. Ed. 2d 56 (2006). The primary focus of our analysis is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Boll*, 2002 S.D. 114, ¶ 32, 651 N.W.2d at 719 (quoting *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 417, 9 L. Ed. 2d 441 (1963)).

[¶13.]      Heney has the duty of establishing a "but for" causal nexus between the illegal search of room 212 and the discovery of the challenged evidence. Heney argues in his brief that "[i]t can be assumed Heney would not have been questioned and arrested if Olson did not come back to the Mineral Palace to locate him had the marijuana cigarette not been located in violation of the Fourth Amendment." Heney further argues that "[t]here is no evidence that the incriminating evidence at issue would be discovered by any lawful means." Essentially, Heney argues that

but for Officer Olson entering room 212, Officer Olson never would have told hotel staff to call him when the occupants of the room returned. Without the call from hotel staff, Officer Olson would never have come back to the Mineral Palace Hotel, Heney would not have admitted to using marijuana, and Heney would not have been arrested. His argument is not persuasive.

[¶14.]        First, it does not seem apparent that without entering room 212, Officer Olson would not have returned to the hotel. Before entering room 212, Officer Olson was confronted with a substantial amount of information about the occurrence of criminal activity. This information included the hotel's complaint about the smell of marijuana, information from a maid that she believed she had found marijuana in room 212, and Officer Olson's firsthand observation of the smell of marijuana in the hallway of the hotel. Heney's argument presumes that Officer Olson would not have followed up on the initial complaint by the hotel based solely on information he gained outside of room 212, without seeing and seizing the actual marijuana. The argument also seems to presume that the hotel management would not have called the police upon smelling marijuana smoke a second time, or alternatively, that the police would have ignored such a complaint. The unlikelihood of these presumptions greatly weakens Heney's assertion of a causal relationship between the illegal search and the challenged evidence.

[¶15.]        Furthermore, at least one recognized exception to the fruit of the poisonous tree rule, closely tied to the causal relationship analysis, also dictates that Heney's motion to suppress was properly denied. As we noted in *State v. Boll*:

> The independent source doctrine applies when evidence is
> legally seized through a source independent of an illegal search.

> The exception was first recognized by the United States Supreme Court in *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S. Ct. 182, 64 L. Ed. 319 (1920), overruled on other grounds by *United States v. Havens*, 446 U.S. 620, 100 S. Ct. 1912, 64 L. Ed. 2d 559 (1980). The *Silverthorne* Court held that although the exclusionary rule forbids any use of illegally seized evidence, "[i]f knowledge of [the evidence] is gained from an independent source [it] may be proved like any [other] . . . ."

2002 S.D. 114, ¶ 23, 651 N.W.2d at 717 (alteration in original) (internal citation omitted). "[W]here an unlawful entry has given investigators knowledge of facts *x* and *y,* but fact *z* has been learned by other means, fact *z* can be said to be admissible because derived from an 'independent source.'" *Murray*, 487 U.S. at 538, 108 S. Ct. at 2533.

[¶16.] In this case, the second call from hotel management and Officer Olson's subsequent interaction with the occupants of room 208 constituted an independent source of evidence. Hotel management informed police that the occupants of room 212 had returned, but also that "there was a strong smell of marijuana coming from another room." Given the hotel's earlier action of calling police to report suspected drug activity, this call to the police would likely have happened even if Officer Olson had never entered room 212. Following up on this call, Officer Olson smelled marijuana in the hallway of the hotel, which seemed to be coming from room 208. This in turn led to knocking on the door to inquire about the smell, which elicited the admission by Heney. Although the fact that marijuana was located in room 212 was discovered through the illegal search, the facts necessary to Heney's conviction in this case were discovered through other means— a separate complaint by hotel staff and subsequent interaction with the occupants

of room 208 in which no knowledge acquired in the initial illegal search was utilized.

[¶17.] Heney asserts that under our decision in *State v. Boll*, all evidence gathered during this return trip was tainted by the prior illegality because Officer Olson's return was at least "partly prompted" by the previous illegal search. Therefore, Heney argues, the second trip to the hotel cannot be considered an independent source, and all evidence acquired through Officer Olson's continuing investigation should be suppressed. Heney's reliance on *Boll* is misplaced.

[¶18.] In *Boll*, police officers conducted an illegal search of the defendant's property and observed evidence of methamphetamine production. 2002 S.D. 114, ¶¶ 9-11, 651 N.W.2d at 714-15. The police then used those observations to secure a search warrant. *Id.* ¶ 12. The defendant moved to suppress evidence found while executing the search warrant. *Id.* ¶ 13. We held, pursuant to *Murray v. United States*, that a warrant would not qualify as an independent source "if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." *Id.* ¶ 26 (quoting *Murray*, 487 U.S. at 542, 108 S. Ct. at 2536).

[¶19.] *Boll*, however, is factually distinguishable from the case at bar. In *Boll*, specific facts discovered during the illegal search prompted and enabled the officers to obtain a warrant. The warrant alone gave officers the authority to legally search Boll's property. In this case, the authority for Officer Olson to be present in Bogin-Dell's room did not come from a warrant, or anything connected to

his knowledge of the marijuana cigarette in room 212. Instead, he was responding to a complaint by hotel management and entered into Bogin-Dell's room by Bogin-Dell's voluntary consent.[3] Unlike the warrant search in *Boll*, entry into Bogin-Dell's room did not hinge upon facts discovered during the illegal search.

[¶20.] Furthermore, Heney's argument expands the "prompted" prong from *Murray*, adopted by this Court in *Boll*, to not only scrutinize a warrant as an independent source, but to scrutinize any continuing police investigation that is "prompted," even in part, by evidence found during an illegal search. However, *Boll* cannot be read so broadly as to eliminate all further investigation in a case once an illegal search has occurred. "The lodestar of both prongs [of the Murray analysis] is whether suppression would place the police in a worse position than they would be in had they not acquired the illegal information in the first instance." *United States v. Swope*, 542 F.3d 609, 615 (8th Cir. 2008) (citation omitted). Expanding the "prompted" prong outside of examining a warrant as an independent source places the police in a worse position than they would be in had they not conducted an

---

3.      A consent search is distinguishable from a search premised upon a warrant, because police may request consent to search an individual's property with absolutely no ground for believing that the person had committed any wrongdoing. *Florida v. Bostick*, 501 U.S. 429, 434-39, 111 S. Ct. 2382, 2386-88, 115 L. Ed. 2d 389 (1991) (explaining that decisions in *Terry*, *Royer*, *Rodriguez*, and *Delgado*, inter alia, support proposition that police may approach someone without any suspicion and ask them potentially incriminating questions). When an officer not equipped with a warrant knocks on a door, the occupant has the ability to answer the door but refuse entry, to answer the door but refuse answering questions, or to ignore the knock altogether. *See Kentucky v. King*, 131 S. Ct. 1849, 1862, 179 L. Ed. 2d 865 (2011) (citing *Florida v. Royer*, 460 U.S. 491, 497-98, 103 S. Ct. 1319, 1323-24, 75 L. Ed. 2d 229 (1983)). A warrant generally deprives the occupant of these options.

illegal search. If we were to adopt Heney's analysis, police would be virtually unable to respond to subsequent complaints of criminal activity once an illegal search had occurred, because any future investigation would be at least partly "prompted" by the illegal search, even if primarily motivated by a new third-party complaint of criminal activity. Thus, we decline to apply the "prompted" test we applied in *Boll* to the facts of this case. The fact that Officer Olson's return to the hotel may have been "in part" motivated by finding marijuana in room 212 is not, in itself, sufficient to justify broad exclusion in this case. *See United States v. Liss*, 103 F.3d 617, 621 (7th Cir. 1997) ("The fact that an officer had actual suspicion, however obtained, cannot render invalid a consent for which the officer did not need any suspicion at all to request.").

[¶21.] However, just because the police are responding to a separate third-party complaint of criminal activity does not automatically mean the evidence obtained during the investigation of that complaint is obtained from an independent source. We must still examine whether the evidence obtained is "come at by exploitation of [the] illegality[.]" *Wong Sun*, 371 U.S. at 488, 83 S. Ct. at 417. Police, while responding to a later complaint, could potentially exploit an earlier illegal search and thereby invalidate evidence from otherwise independent source. For example, police could impermissibly exploit the illegal search by confronting a suspect with knowledge gained during the illegal search in order to coerce a

confession or a consent to search.[4]  However, no such exploitation is alleged in this case.

[¶22.]        Although Officer Olson knew that marijuana was present in room 212, the new smell of marijuana smoke led him to a different room, room 208, during his second call to the hotel.  Officer Olson had reason to believe the occupants of the two rooms may have been together, but Officer Olson had no way of knowing that the registered guest of room 212 would be found in room 208 on this second visit to the hotel.  He did have reason to believe, however, that someone in room 208 was smoking marijuana, based on the smell emanating from room 208.  The record reflects that Officer Olson refrained from mentioning what he had found in room 212 while asking Bogin-Dell if he could enter room 208.  Furthermore, the record does not reflect that Officer Olson's knowledge of the marijuana cigarette in room 212 was used in any way during his interaction with the occupants of room 208.[5]

---

4.    *See, e.g.*, *State v. Borst*, 795 N.W.2d 262, 270 (Neb. 2011) (defendant "knew that the officers had seized the marijuana plant and the syringe from his home, which knowledge likely prompted him to admit his involvement with the controlled substances"); *State v. Jennings*, 461 A.2d 361 (R.I. 1983) (police confronted defendant with fact that police found murder weapon in defendant's apartment); *Perez v. People*, 231 P.3d 957, 964 (Colo. 2010) (defendant saw police illegally seize drugs from glove compartment and later defendant confessed the drugs were his; "connection between the illegal search and the confession is a tight one"); *State v. Guggenmos*, 253 P.3d 1042, 1052 (Or. 2011) (defendant's confession not voluntary where officer "traded on evidence that he had observed in his unlawful search . . . by disclosing what he had seen and asking for consent to reenter and search the bedroom").

5.    The danger of exploitation is greater where the illegal search and a subsequent consent search are in the same location. *See Liss*, 103 F.3d at 621. Excluding evidence found in the same location as the illegal search—especially when the earlier illegal search and the later legal search are in close temporal proximity—may be warranted because the defendant is likely

(continued . . .)

[¶23.] Once inside, Officer Olson simply asked if anyone was smoking marijuana, a reasonable question for a police officer to ask when responding to a complaint of marijuana smell. Heney then readily admitted to smoking marijuana. Nothing in the record indicates that this admission was prompted or coerced by Officer Olson's knowledge of the marijuana in room 212. Heney then, without being asked to do so, turned his marijuana over to Officer Olson, apparently under the mistaken belief that his California medical marijuana card granted him the ability to possess and use marijuana while in South Dakota. Again, nothing in this handing over of evidence seems prompted by or effected in any way by Officer Olson's earlier discovery. These actions gave Officer Olson probable cause to validly arrest Heney.[6] Officer Olson did not even know that the person he had arrested was the occupant of room 212 until after the fact. Because these actions were independent of, and thus untainted by, the search in room 212, the evidence gathered during Officer Olson's return visit to the Mineral Palace Hotel was purged of the initial taint of illegality.

[¶24.] Although Officer Olson could not permissibly exploit knowledge gained during the illegal search, "[t]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position

_____

(. . . continued)

to believe he has already been caught red-handed and resistance is futile, thereby enabling the police to coerce the defendant into confession or consent. *See id.*

6. It is not challenged that the cocaine on Heney's person would be admissible if Heney's arrest was based on properly obtained evidence of criminal activity.

that they would have been in if no police error or misconduct had occurred." *Murray*, 487 U.S. at 537, 108 S. Ct. at 2533 (quoting *Nix*, 467 U.S. at 443, 104 S. Ct. at 2509). Had no illegal search of room 212 occurred, Officer Olson still would have possessed the knowledge and authority to respond to the second complaint of marijuana smoke at the Mineral Palace. He still would have been able to inquire about that smell to the people inside of room 208, from which the smell was emanating. Finally, Officer Olson still would have received the same response from the occupants of room 208, which ultimately led to Heney's arrest. To prevent the police from following up on such a complaint, simply because the police possessed some knowledge obtained through illegal means would be to grant too broad of immunity at too high a cost to society.

[¶25.] We conclude that the second call to police and the subsequent interaction with the occupants of room 208 constitutes an independent source of evidence against Heney and that the evidence obtained thereby bore no causal connection to the evidence illegally seized in room 212. Because we reach our decision under the independent source doctrine, already recognized by this Court, we need not decide this issue under the lesser-developed attenuation doctrine analysis advanced by the State.

## Conclusion

[¶26.] Because the challenged evidence was not come at by exploitation of Officer Olson's initial illegal search, we affirm the trial court's Order denying in part Heney's Motion to Suppress Evidence.

[¶27.] KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.