#26666-a-LSW

**2014 S.D. 6**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                           Plaintiff and Appellee,

    v.

ALISIA JUANA QUEVEDO,                            Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JEROME A. ECKRICH, III
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

BETHANY L. ERICKSON
Assistant Attorney General
Pierre, South Dakota                             Attorneys for plaintiff
                                  and appellee.

RENA M. HYMANS
Sturgis, South Dakota                            Attorney for defendant
                                  and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 14, 2014

OPINION FILED **02/12/14**

WILBUR, Justice

[¶1.] Alisia Quevedo appeals the circuit court's denial of her motion to suppress evidence. Because law enforcement officers constitutionally entered the Black Hawk home to arrest both Quevedo and Yellow Eagle, the circuit court properly denied the suppression of evidence obtained as a result of her arrest. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

[¶2.] On April 2, 2012, a federal court issued an arrest warrant for Christopher Yellow Eagle for a supervised release violation. When law enforcement had previously served an arrest warrant on Yellow Eagle for an unrelated offense, he had attempted to hide or flee in order to avoid being arrested.[1]

[¶3.] Yellow Eagle's arrest warrant was referred to the Rapid City Area Joint Fugitive Task Force (task force). Participants in the task force include, among others, the United States Marshals Service, the Pennington County Sheriff's Office, and the Meade County Sheriff's Office.

[¶4.] In search of Yellow Eagle, the task force officers went to Yellow Eagle's mother's home on April 4, 2012. Yellow Eagle's mother informed the officers that Yellow Eagle was living with his girlfriend, Quevedo, at her home in Black Hawk, located in Meade County, South Dakota. The task force officers checked department databases and were able to find an address in Black Hawk for Quevedo.

---

1. On another occasion, law enforcement apprehended Yellow Eagle while he was in a bathroom flushing a toilet. Once in the bathroom, authorities located a bag of what appeared to be methamphetamine and Yellow Eagle's identification card near the toilet.

In conducting this research, the officers also learned that a state warrant for Quevedo's arrest had been issued in Meade County. The warrant, issued February 16, 2012, was for Quevedo's arrest for her failure to appear for a sentencing hearing for driving with a suspended license pursuant to SDCL 32-12-65. The information was relayed electronically to the task force officers, who did not have a physical copy of Quevedo's arrest warrant. The warrant was addressed to "any law enforcement officer in the State of South Dakota."

[¶5.] Federal and Pennington County officers, and members of the task force, arrived at the address provided to them by the department databases. Deputy United States Marshal Cole Willnerd, who was present at the address and who ran the license plate on at least one of the vehicles parked at the address, testified that he could not recall the identity of the registered owner of the vehicle.

[¶6.] The officers knocked on the door of the home for a period of time before the couple's 12-year-old son answered the door. When asked by the officers, the child confirmed that Yellow Eagle and Quevedo were both in the house.[2] Based on this information, the task force officers entered the home. Once in the back bedroom, the officers observed that both Quevedo and Yellow Eagle appeared to be

---

2. Deputy United States Marshal Willnerd and the couple's 12-year-old son testified at the August 27, 2012 evidentiary hearing. Deputy Willnerd testified that when the couple's son answered the door, Deputy Willnerd "identified [himself], told [the couple's son] who [he] was, told him [they] had a warrant for Christopher Yellow Eagle, and [Deputy Willnerd] asked [the couple's son] if Christopher Yellow Eagle was there." The couple's 12-year-old son testified that when the task force arrived at the home, the officers asked "Is your mom and dad home?" The circuit court noted that "While there is some dispute about what specifically took place during the exchange, the officers corroborated the presence of Mr. Yellow Eagle and [Quevedo] and subsequently entered the home."

under the influence of a controlled substance and they had drugs on their persons. Yellow Eagle told the officers that there were more drugs and paraphernalia in the home. The circuit court later granted a search warrant of the home.

[¶7.] Quevedo was charged with possession of a controlled substance in violation of SDCL 22-42-5. Quevedo filed a motion to suppress evidence—the subject of this appeal. Two evidentiary hearings on the motion were held on August 27, 2012 and October 25, 2012. Quevedo argued that federal and Pennington County law enforcement, who effectuated the arrest warrant, were not authorized to arrest her. She further alleged that the task force officers' entrance into her home violated the United States Constitution and the South Dakota Constitution because Yellow Eagle was a third party in her home, requiring the officers to obtain a separate search warrant for the home. Accordingly, she argued that all evidence gained after the officers' entrance into her home should have been suppressed. The circuit court denied her motion concluding that the officers had the authority to effectuate Quevedo's arrest and that the officers constitutionally entered the Black Hawk home to arrest Quevedo. Additionally, the circuit court concluded that the officers constitutionally entered the home to arrest Yellow Eagle, and alternatively, exigent circumstances existed to justify the warrantless entry into the home to arrest Yellow Eagle.

[¶8.] On January 24, 2013, a court trial based on stipulated facts took place. Quevedo was convicted of possession of a controlled substance and subsequently sentenced to four years in the state penitentiary with four years suspended. Quevedo now appeals the circuit court's denial of her motion to suppress.

## STANDARD OF REVIEW

[¶9.]     "A motion to suppress for an alleged violation of a constitutionally protected right raises a question of law, requiring de novo review." *State v. Heney*, 2013 S.D. 77, ¶ 8, 839 N.W.2d 558, 561 (quoting *State v. Hess*, 2004 S.D. 60, ¶ 9, 680 N.W.2d 314, 319). "Factual findings of the lower court are reviewed under the clearly erroneous standard, but once those facts have been determined, 'the application of a legal standard to those facts is a question of law reviewed de novo.'" *Id.* ¶ 8, 839 N.W.2d at 561-62 (quoting *Hess*, 2004 S.D. 60, ¶ 9, 680 N.W.2d at 319). "In this case, [Quevedo] does not contend that any of the [circuit] court's findings of fact are clearly erroneous. Therefore, we review this matter de novo." *State v. Rademaker*, 2012 S.D. 28, ¶ 7, 813 N.W.2d 174, 176 (quoting *State v. Quartier*, 2008 S.D. 62, ¶ 9, 753 N.W.2d 885, 888).

## DECISION

[¶10.]     Quevedo argues that the federal and Pennington County law enforcement officers, who executed the arrest warrant, were not authorized to enter her home to arrest her. Additionally, she contends that if this Court determines that task force officers had the authority to arrest her, she was deprived of her "constitutional right to be free from search and seizure in her own home." Quevedo alleges that Yellow Eagle was a third party in her home requiring the officers to obtain a separate search warrant for the home. She also argues that no exception to the search warrant requirement applies. Accordingly, Quevedo argues that all evidence seized from her home should have been suppressed.

#26666

[¶11.] In addressing Quevedo's arguments, we must first examine what authority task force officers had to execute Quevedo and Yellow Eagle's arrest warrants. Deputy United States Marshals have the legal authority to participate in joint federal-state fugitive task forces in order to arrest state fugitives based on state warrants. 28 U.S.C.A. 566(e)(1)(B) (granting the power to "investigate such fugitive matters, both within and outside the United States, as directed by the Attorney General"); Authority of FBI Agents, Serving as Special Deputy U.S. Marshals, to Pursue Non-Federal Fugitives, 1995 WL 944018, *6-7, 19 Op. O.L.C. 33, (1995). Deputy United States Marshals have the authority, "in executing the laws of the United States within a State[,]" to "exercise the same powers which a sheriff of the State may exercise in executing the laws" of that state. 28 U.S.C.A. 564.

[¶12.] Additionally, South Dakota law provides federal law enforcement officers with the same authority as state and local law enforcement officers in South Dakota when making an arrest as part of a joint federal-state task force:

> Any federal law enforcement officer holds the same authority as a state or local law enforcement officer in this state when making an arrest for a nonfederal crime under any of the following circumstances:
> . . . .
> (3) The officer is participating in a task force composed of state or local law enforcement officers and federal law enforcement officers.

SDCL 23A-3-25. Further, South Dakota law states that an arrest warrant shall be executed by any law enforcement officer who is authorized by law to execute the warrant. SDCL 23A-2-7 (stating "[a] warrant . . . shall be executed by any law enforcement officer who is authorized by law to execute the same").

[¶13.]        Here, the record reveals that the task force is comprised of federal and state law enforcement agencies, including the United States Marshals Service, Pennington County Sheriff's Office, and Meade County Sherriff's Office.  The task force officers, who executed Quevedo's and Yellow Eagle's arrest warrants, were officers from the United States Marshals Service and Pennington County Sheriff's Office.  Federal and state law authorizes federal officers participating in task forces to execute state and local warrants.  28 U.S.C.A. 564, 566(e)(1)(B); SDCL 23A-2-7, 23A-3-25.  Thus, the officers participating in the task force had the authority to execute state and federal warrants, including Quevedo's state warrant and Yellow Eagle's federal warrant.

[¶14.]        In addition, the task force officers constitutionally entered Quevedo's home to arrest her on her outstanding warrant.  "The Fourth Amendment generally requires a warrant based upon probable cause to support the search and seizure of a person."  *State v. Bonacker*, 2013 S.D. 3, ¶ 9, 825 N.W.2d 916, 919.  For Fourth Amendment purposes, "[a] valid arrest warrant carries with it the implicit but limited authority to enter the residence of the person named in the warrant in order to execute that warrant."  *United States v. Risse*, 83 F.3d 212, 215 (8th Cir. 1996) (citing *Payton v. New York*, 445 U.S. 573, 603, 100 S. Ct. 1371, 1388-89, 63 L. Ed. 2d 639 (1980)).  "Under *Payton*, officers executing an arrest warrant must have a '*reasonable belief* that the suspect resides at the place to be entered . . . and have reason to believe that the suspect is present' at the time the warrant is executed."  *Id.* at 216 (quoting *United States v. Lauter*, 57 F.3d 212, 215 (2d Cir. 1995)).

[¶15.]       The task force officers reasonably believed that both Quevedo and

Yellow Eagle resided at the Black Hawk address.  Initially, the task force officers

sought to arrest Yellow Eagle on a federal arrest warrant.  In their investigation as

to where Yellow Eagle was residing, the officers learned from Yellow Eagle's mother

that Yellow Eagle was living with Quevedo.  Deputy United States Marshal

Willnerd testified that the task force officers conducted a search of department

databases and were able to locate an address for Quevedo in Black Hawk.  It was

during this database search that the officers learned of Quevedo's state arrest

warrant, which was addressed to "any law enforcement officer in the State of South

Dakota."

[¶16.]       The task force officers also possessed a reasonable belief that Quevedo

and Yellow Eagle were present in the Black Hawk home when officers executed

Yellow Eagle's warrant.  Upon arrival, the officers established through Quevedo and

Yellow Eagle's son that Quevedo and Yellow Eagle were, in fact, inside the home.

Based on Quevedo's valid arrest warrant and her presence in her home at the time

of the execution of Yellow Eagle's warrant, the officers were justified in entering

Quevedo's home to arrest her.

[¶17.]       Moreover, even if the task force officers were not authorized to enter

the Black Hawk home to arrest Quevedo on her arrest warrant, officers were

authorized to constitutionally enter the Black Hawk home in order to arrest Yellow

Eagle and to use any evidence found against Quevedo.  Indeed, Yellow Eagle was a

co-resident of Quevedo's home.  *Risse*, 83 F.3d at 215 (8th Cir. 1996) (citing *Payton*,

445 U.S. at 603, 100 S. Ct. at 1388-89) (stating "[a] valid arrest warrant carries with

it the implicit but limited authority to enter the residence of the person named in the warrant in order to execute that warrant"). "[A]bsent exigent circumstances or consent, an arrest warrant does not justify entry into a third person's home to search for the subject of the arrest warrant." *Risse*, 83 F.3d at 215 (citing *Steagald v. United States*, 451 U.S. 204, 215-16, 101 S. Ct. 1642, 1649-50, 68 L. Ed. 2d 38 (1981)). "However, 'if the suspect is a co-resident of the third party, then *Steagald* does not apply and *Payton* allows both arrest of the subject of the arrest warrant and use of the evidence found against the third party.'" *Id.* at 216 (quoting *United States v. Litteral*, 910 F.2d 547, 553 (9th Cir. 1990)).

[¶18.] The record demonstrates that the task force officers reasonably believed that Yellow Eagle resided with Quevedo at the Black Hawk address "for some time." Yellow Eagle's mother told the officers that Yellow Eagle was living with his girlfriend, Quevedo. Quevedo's address was confirmed by a search of law enforcement databases. Further, when the officers arrived at the Black Hawk home, Quevedo and Yellow Eagle's son confirmed that Quevedo and Yellow Eagle were inside the home. The officers entered the bedroom and it was apparent that both Quevedo and Yellow Eagle were under the influence of a controlled substance. The task force officers constitutionally entered the Black Hawk home to arrest Quevedo, or alternatively, Yellow Eagle. The circuit court properly denied the suppression of evidence obtained as a result of the arrests. Quevedo's other argument to this Court is, therefore, without merit. We affirm.

[¶19.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and SEVERSON, Justices, concur.