#30344-aff in pt & rev in pt-SPM
**2025 S.D. 2**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

VOR, INC., and GRAND VALLEY
HUTTERIAN BRETHREN, INC.,　　　　　　　Plaintiffs and Appellees,

　　　v.

ESTATE OF PAUL O'FARRELL
and SKYLINE CATTLE COMPANY,
a South Dakota Corporation,　　　　　　　Defendants and Appellants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBERT L. SPEARS
Retired Judge

\* \* \* \*

DANIEL K. BRENDTRO
MARY ELLEN DIRKSEN
BENJAMIN M. HUMMEL of
Hovland, Rasmus, Brendtro,
　& Trzynka, Prof. LLC
Sioux Falls, South Dakota　　　　　　　Attorneys for defendants and
　　　　　　　　　　　　　　　　　　appellants.

\* \* \* \*

ARGUED
NOVEMBER 8, 2023
OPINION FILED **02/05/25**

* * * *

LEE SCHOENBECK
JOE ERICKSON of
Schoenbeck & Erickson, P.C.
Watertown, South Dakota

Attorneys for plaintiff and
appellee VOR, Inc.


REED RASMUSSEN of
Siegel, Barnett & Schutz
Aberdeen, South Dakota

WILLIAM G. BECK
SETH LOPOUR of
Woods, Fuller, Shultz & Smith, P.C.
Sioux Falls, South Dakota

Attorneys for plaintiff and
appellee Grand Valley
Hutterian Brethren, Inc.

#30344

MYREN, Justice

[¶1.]        VOR, Inc. and the Grand Valley Hutterite Brethren (Colony) brought an eviction action against Paul O'Farrell and Paul's company, Skyline Cattle Co. (Skyline), under South Dakota's forcible entry and detainer (FED) statutes.  Paul moved to dismiss the suit and argued, among other things, that the eviction should have been brought as a compulsory counterclaim in Paul's pending undue influence suit against his brother Kelly, the Colony, and the Raymond and Victoria O'Farrell Living Trust (Trust).  After the circuit court denied Paul's motion to dismiss, Paul filed an answer demanding a jury trial and requested a continuance.  The circuit court denied the continuance request and proceeded with a court trial.  The circuit court granted the eviction, ordered Paul to vacate the property within ten days, and permitted the Colony to keep any of Paul's personal property abandoned after the ten days expired.  Paul now appeals.  We affirm in part and reverse in part.

**Factual and Procedural Background**

[¶2.]        Raymond and Victoria O'Farrell, husband and wife, resided in Marvin, South Dakota, and had five children: Paul, Lance, Kelly, Rita, and Marcie.  In 2002, Raymond and Victoria created VOR, a corporation to hold ownership of their land.  Each spouse was initially assigned 12,500 shares in VOR.  In 2011, Raymond and Victoria created the Trust, named themselves trustees, and transferred all VOR shares to the Trust.

[¶3.]        Raymond and Victoria originally had ownership interests in Skyline.  However, Paul became the company's sole owner in 2019.  Acting through Skyline,

Paul rented some of VOR's land (the Property) through an oral lease. Paul lived on the Property and moved a house onto it approximately five years ago.

[¶4.] Raymond and Victoria's son Kelly moved in with them in 2021. Shortly after that, Victoria injured her leg in a fall and underwent surgery. While recovering from the surgery, Victoria temporarily lived at the hospital and then at a nursing home. While Victoria was not living at home, Kelly allegedly began manipulating Raymond to persuade him to make changes to his and Victoria's estate plans. These changes included naming Kelly as Raymond's power of attorney, naming different directors of VOR, and transferring half of the VOR shares from the Trust to Raymond individually. Raymond was allegedly susceptible to persuasion because of his limited education and literacy.

[¶5.] VOR sold parcels of land, including the Property, to the Colony in August 2022 for $3.2 million. As part of the purchase agreement, the Colony could withhold paying $300,000 of the purchase price until Paul had vacated or had been evicted from the Property. Paul and Skyline (collectively referred to as "Paul") were notified in August that the oral lease agreement with VOR would not be renewed and was being terminated. Paul attempted to negotiate a new lease with the Colony. The Colony sent a written lease, but it was never finalized because Paul did not return a signed copy to the Colony.

[¶6.] VOR and the Colony (collectively referred to as the "Landlords") served Paul with a notice to quit on March 29, 2023. The Landlords then initiated this action under South Dakota's forcible entry and detainer statutes (SDCL chapter 21-16) to regain possession of the Property from Paul. Paul was served with the

summons and complaint on April 17, 2023.  Rather than filing an answer, Paul filed "Defendants' 04/21/2023 Motions," seeking to dismiss the suit.  Paul's motions to dismiss were based on the Landlords' failure to state a claim under SDCL 15-6-12(b)(5), failure to join essential parties under SDCL 15-6-12(b)(6) and SDCL 15-6-19, and failure to bring compulsory counterclaims under SDCL 15-6-13(a).  Paul asserted that the eviction claim should have been brought in an existing civil lawsuit in which he had sued Kelly, the Colony, and the Trust, seeking to rescind the land sale between VOR and the Colony.

[¶7.]        In this eviction action, the Landlords filed a notice of court trial on April 24, 2023, pursuant to SDCL 21-16-7 and -8, that notified Paul of a court trial set for April 27.  Paul filed an objection to the notice of court trial on April 25, claiming that "Plaintiffs are seeking to hold an eviction trial before any of the pending motions to dismiss have been resolved" and before Paul had an "opportunity for a jury demand."  The circuit court subsequently denied Paul's motions to dismiss on April 26, concluding, "Based on my independent review of the statutes and authorities cited, I have determined that an eviction action is a specialized proceeding with specific rules and statutes that apply.  The statutes and authorities cited by the defendant are inapplicable to such a proceeding.  I will proceed as scheduled with the eviction matter tomorrow."

[¶8.]        Paul filed an answer the next morning with a demand for a jury trial. While the circuit court had already denied the motions to dismiss via email, it allowed the attorneys to argue on the motions to dismiss in court the following day. The circuit court again denied the motions to dismiss before the trial began and

noted, "Under Rule 21-16-4, this is an eviction proceeding. . . . The only thing allowed by statute in an eviction proceeding is the facts and circumstances surrounding the eviction."

[¶9.] After the circuit court denied the motions to dismiss, Paul requested a continuance of five days. The circuit court denied the request and held the notice of court trial was proper. The circuit court reasoned:

> It appears to the Court, that the defendant utilized a tactical procedure such as asking for a continuance, dismissal and brought in issues of compulsory counter claims [sic] and tried to, for lack of a better word, in this Court's opinion, drag other issues into an eviction proceeding that are inappropriate. He utilized that tactic instead of answering the summons and complaint and dealing with the allegations relevant to an eviction procedure.

[¶10.] The circuit court then proceeded with a court trial. The Landlords called Paul as its first witness in its case-in-chief. During Paul's testimony, he attempted to explain how Kelly had "manipulated" Raymond and that Kelly was "making the decisions, not Raymond[,]" regarding Raymond and Victoria's estate plans. The Landlords objected to this testimony, arguing that allegations of undue influence of a prior sale of the Property were outside the scope of an eviction proceeding. The circuit court sustained the objection and continued throughout the trial to limit evidence of alleged undue influence exerted upon Raymond by Kelly. During Paul's testimony, while sustaining an objection, the circuit court said, "I will also comment, that based on my memory, late last fall, Mr. O'Farrell senior testified live in front of me and it's this Court's opinion that some of the testimony now is contrary to what this Court observed." Paul moved to strike the circuit court's observations from the previous proceeding, but the circuit court denied the motion.

[¶11.] The Landlords also called Tom Wipf, secretary of the Colony, who testified that the Colony purchased the Property, Paul never leased the Property from the Colony, and Paul was wrongfully living on the Property.

[¶12.] After the Landlords concluded their case-in-chief, Paul called Wipf as the defense's first witness and attempted to use him to "challenge the validity of the underlying transactions on legal and equitable grounds." The Landlords objected, arguing the testimony was beyond the scope of an eviction proceeding. The circuit court permitted some testimony of Kelly's involvement with Raymond and the sale of the Property but excluded testimony that discussed the estate plans or alluded to undue influence. Wipf also explained how some of the Property's purchase price was withheld until Paul had vacated the Property or was evicted.

[¶13.] Paul's final witness was his brother Lance, who was asked about Kelly's attempt to isolate Raymond and assert undue influence. The Landlords objected to this testimony, arguing it was beyond the scope of eviction, and the circuit court again excluded the testimony.

[¶14.] After all the evidence was presented, the circuit court explained that "[m]uch of the testimony and much of the other issues that were brought into this proceeding or attempted to be brought into this proceeding were completely irrelevant to an eviction proceeding and simply not allowed." The circuit court again noted that it had "heard some of this before in a previous proceeding" and that it "found much of the testimony of the defendant [Paul] to be non-credible." The circuit court granted the eviction in favor of the Landlords and ordered the Property to be vacated within ten days. Additionally, in its written judgment, the

court ordered that upon expiration of the ten days, the Colony "may treat all personal property remaining on the . . . real property and in the buildings located on the real property . . . as having been abandoned by the Defendants[.]" At a subsequent hearing, the circuit court also granted the Landlords' motion for attorney's fees.

[¶15.] Paul and Skyline appeal and raise the following issues, which we restate:

1. Whether South Dakota's forcible entry and detainer statutes allow for pre-answer motions and whether such motions extend the time for filing an answer.

2. Whether this FED action must have been brought as a compulsory counterclaim in an existing non-eviction lawsuit.

3. Whether the circuit court erred when it denied Paul and Skyline's demand for a jury trial.

4. Whether the circuit court abused its discretion when it denied Paul and Skyline's request for a continuance.

5. Whether the circuit court abused its discretion when it excluded evidence of alleged undue influence and considered information from prior proceedings between the parties.

6. Whether Paul and Skyline's personal property was subject to forfeiture.

**Decision**

***1. Whether South Dakota's forcible entry and detainer statutes allow for pre-answer motions and whether such motions extend the time for filing an answer.***

[¶16.] This case turns on the interrelation between South Dakota's rules of civil procedure and FED statutes and requires us to consider two questions: (1)

whether a party may file pre-answer motions during a FED suit and (2) whether filing such motions extend the time to file an answer. Paul argues on appeal that the circuit court "erred by overlooking SDCL 15-6-81(a) . . . . Although evictions are specialized proceedings, they are still subject to the Rules of Civil Procedure, and, the scope of such proceedings is not rigidly limited to the question of possession." Therefore, we first analyze the nature of the relevant statutes before considering the issues raised by Paul. "We review issues of statutory interpretation de novo." *State v. Long Soldier*, 2023 S.D. 37, ¶ 11, 994 N.W.2d 212, 217.

[¶17.] All parties agree that SDCL 15-6-81(a) provides context for the relationship between SDCL chapters 15-6 and 21-16. SDCL 15-6-81(a) reads, "This chapter does not govern pleadings, practice, and procedure in the statutory and other proceedings included in but not limited to those listed in Appendix A to this chapter *insofar as they are inconsistent or in conflict with this chapter*." (Emphasis added.) The statutory FED proceeding is among those listed in Appendix A, which means South Dakota's rules of civil procedure are effective in FED proceedings as long as they are not inconsistent or in conflict with the procedural rules established in chapter 21-16. Paul argues that "[e]ven though they are 'special proceedings,' eviction actions remain subject to the Rules of Civil Procedure." That is correct unless those rules conflict with the FED statutes and thwart the underlying purpose of the FED statutes.[1]

---

1. Paul correctly notes the circuit court did not wait five days to sign the Landlords' proposed findings of fact and conclusions of law pursuant to SDCL 15-6-52(a). While this was error, the circuit court's actions caused no prejudice to Paul. Paul was able to file objections and Landlords have not

(continued . . .)

[¶18.]    FED proceedings are truncated and designed to bring a quick resolution to the question of possession. SDCL 21-16-7 provides:

> The time for appearance and pleading shall be four days from the time of service on the defendant or thirty days after the publication of service under § 21-16-6.1, whichever occurs sooner. No adjournment or continuance shall be made for more than fourteen days, unless the defendant applying therefor shall give an undertaking to the plaintiff with good and sufficient surety to be approved by the court, conditioned for the payment of the rent that may accrue, together with costs if judgment be rendered against the defendant.

[¶19.]    SDCL 21-16-8 further aids in setting a FED timeline and provides that:

> An action under this chapter may be brought on for trial upon two days' notice after issue is joined. If a jury trial be demanded and no jury is in attendance on the day the action is noticed for trial, the court shall cause a special venire to issue as in cases where extra jurors are required, and proceed to impanel a jury and try the action as in other civil cases.

[¶20.]    Paul argues his motion to dismiss was proper and that its filing extended the time to file an answer. The FED statutes neither expressly permit nor prohibit a party's ability to engage in motions practice. Motions practice that is not inconsistent with or in conflict with the FED statutes is permissible.

[¶21.]    Generally, a motion filed under SDCL 15-6-12 extends the time for when the answer must be filed. *See* SDCL 15-6-12(a) ("The service of a motion

---

(. . . continued)
argued on appeal that Paul did not preserve the issues for appeal by not filing proper objections. *See People ex rel. A.A.*, 2021 S.D. 66, ¶ 31, 967 N.W.2d 810, 820 ("Although prematurely signing the State's proposed findings and conclusions prevented the circuit court from ruling on Father's objections . . . , there is no question that his arguments are, nevertheless, preserved for review. Under the circumstances, Father has not established prejudice caused by the circuit court's error.").

permitted under § 15-6-12 alters these periods of time [to answer] . . . : (1) If the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within ten days after notice of the court's action[.]").  But "[c]hapter 21-16 is designed as a speedy remedy to provide possession to the person rightfully entitled to it."  *Heiser v. Rodway*, 247 N.W.2d 65, 67 (S.D. 1976).  Unlike the rules of civil procedure, SDCL 21-16-7 does not extend the time for appearance and pleading when a motion to dismiss is filed.  Instead, unless the court grants an extension, the defendant is required to join all issues and defenses within four days after service.  *Id.* ("The time for appearance and pleading shall be four days from the time of service on the defendant[.]").  As noted earlier, when general rules of civil procedure are inconsistent or in conflict with the FED statutes, they must yield to the statutory FED procedure.

[¶22.]        Under SDCL 21-16-7, Paul was required to appear and plead within four days of being served and thus was required to file his motion to dismiss and answer simultaneously, or at least within the four days required by SDCL 21-16-7.  Paul notes SDCL 15-6-12(b), which states, "[a] motion making any of these defenses shall be made before pleading if a further pleading is permitted."  However, SDCL 21-16-7 requires all the issues to be joined within four days after service.  Construing SDCL 15-6-12(b) to allow a FED defendant to extend unilaterally the time to file his answer would be inconsistent with the expedited timing requirements of the FED statutes and a violation of the principle outlined in SDCL 15-6-81(a).

[¶23.]    Paul suggests that we must harmonize the rules in chapter 21-16 with the general rules of civil procedure found within chapter 15-6. SDCL 15-6-81(a) does not dictate harmonization; it directs precedence. When general rules of civil procedure conflict with the procedural rules found in the FED statutes, the general rules must yield to the FED procedural rules designed to expedite the procedure. Consequently, pursuant to SDCL 21-16-7, Paul was required to file his answer within four days of receiving service of the complaint. Filing a pre-answer motion to dismiss did not extend the time to file his answer, and, as a result, Paul's answer was untimely.

### 2.    *Whether this FED action must have been brought as a compulsory counterclaim in an existing non-eviction lawsuit.*

[¶24.]    Paul moved to dismiss on the grounds that the FED claim should have been raised as a compulsory counterclaim in the civil action in which he was alleging Kelly had unduly influenced Raymond into selling the Property to the Colony and seeking a declaration that Skyline is legally entitled to continue farming the property at issue.[2] We first consider the merits of Paul's argument that the Landlords' FED action was a compulsory counterclaim to the undue influence proceeding.

[¶25.]    SDCL 15-6-13(a) provides, in relevant part, "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is

---

2.    Paul only appeals the denial of the motion to dismiss for failure to bring compulsory counterclaims.

the subject matter of the opposing party's claim[.]" Paul contends the Landlords' FED action should have been asserted in the Colony's answer in the undue influence proceeding. In that proceeding, Paul alleged that, "For the past year, Kelly O'Farrell has orchestrated a scheme to interfere with the long-standing trust and estate plans of his parents," and such conduct "resulted in the precipitous and illegal sale of nearly all the family's farm ground." Paul claimed that Kelly manipulated Raymond, "a person in need of protection," and "engaged in other misconduct, in order to set in motion an improper and illegal set of maneuvers, all of which were designed to enrich himself at the expense of his parents and his brother Paul." Paul's primary objectives for the undue influence claim were to "declare 'void' the improper corporate/trust maneuvers," "rescind and unwind the $3.2 million real estate transaction," and "recover damages for the injured parties."

[¶26.]        Generally, a FED action "cannot be brought in connection with any other [action] except for rents and profits or damages[.]" SDCL 21-16-4; *see also LPN Tr. v. Farrar Outdoor Advert., Inc.*, 1996 S.D. 97, ¶ 8, 552 N.W.2d 796, 798. However, some "inquiry may be made into equitable considerations in an unlawful detainer action, as long as those considerations are relevant to the *right of possession*." *LPN Tr.*, 1996 S.D. 97, ¶ 9, 552 N.W.2d at 798 (emphasis added) (quoting *Heiser*, 247 N.W.2d at 68). Paul's undue influence action did not seek any remedies related to rents, profits, or damages from the lease. Consequently, unless Paul's undue influence action involved "questions of possession," the Landlords' eviction claim would not have constituted a compulsory counterclaim.

[¶27.] Our case law surrounding FED actions is not extensive and we have not yet determined what actions comprise the "question of possession" category of claims. However, the Nebraska Supreme Court has noted that: "A forcible entry and detainer action does not try the question of title, but only the immediate right of possession." *Fed. Nat'l Mortg. Ass'n v. Marcuzzo*, 854 N.W.2d 774, 779 (Neb. 2014).

[¶28.] VOR sold the Property to the Colony. Paul's undue influence proceeding challenges the validity of that transfer. If the sale to the Colony were invalidated, the title of the Property would return to VOR. Thus, either VOR or the Colony will hold title to the Property at the conclusion of Paul's undue influence litigation. Both VOR and the Colony were plaintiffs in this eviction action against Paul and Skyline. Consequently, the existence of the undue influence lawsuit did not raise any questions of title that would affect the Landlords' ability to terminate the lease and evict Paul or Skyline. That lawsuit did not involve any dispute about who had the right to the immediate possession of the Property. Therefore, the Landlords were not obligated to assert their FED claim as a counterclaim in Paul's case relating to title. *See* SDCL 21-16-4.

[¶29.] The dissent cites *Heiser* and *LPN Trust* as examples in which we have allowed consideration of "equitable considerations" within FED actions in support of its more expansive view of possession. But these decisions merely illustrate the uncontroverted rule that issues relating to immediate possession may fairly be tried in a FED action. In both *Heiser* and *LPN Trust*, the equitable considerations went directly to a tenant's right to possession under the provisions of a lease. In *Heiser*,

the tenant claimed the existence of an oral lease entitling him to possession. 247 N.W.2d at 66. In *LPN Trust*, the tenant cited a ten-year option provision in the parties' written lease. 1996 S.D. 97, ¶ 3, 552 N.W.2d at 797.

[¶30.] Neither Paul nor Skyline has a right to *immediate* possession. Unlike the tenants in *Heiser* and *LPN Trust*, Paul and Skyline do not have a lease; they claim that they *should* have a lease and were prevented from having a claim to possession by Kelly's unlawful conduct. This claim to possession is remote and attenuated, not immediate. Paul and Skyline admit they must first win on their other claims in order to "unwind" past events. It is only if they are successful in this "unwinding" that they can claim a right to possession.

[¶31.] As it relates to the question of immediate possession, the Landlords initiated the FED action to recover possession. The FED action is limited to issues related to the right of possession. As a result, the FED action was not a compulsory claim that the Colony was required to assert as part of Paul's undue influence action. We affirm the circuit court's denial of Paul's motion to dismiss for failure to bring a compulsory counterclaim.

### 3. Whether the circuit court erred when it denied Paul and Skyline's demand for a jury trial.

[¶32.] Paul argues it was error for the circuit court to deny his request for a jury trial. "Article VI, Section 6 of the South Dakota Constitution guarantees a right to a jury trial in all cases at law." *Granite Buick GMC, Inc. v. Ray*, 2014 S.D. 78, ¶ 7, 856 N.W.2d 799, 802 (citation omitted). The rules of civil procedure provide that "[a]ny party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the

commencement of the action[.]" SDCL 15-6-38(b). But "[t]he failure of a party to serve a demand as required by § 15-6-38 constitutes a waiver by the party of trial by jury." SDCL 15-6-38(d).

[¶33.] SDCL 21-16-8 also requires a party to demand a jury trial. While SDCL 21-16-8 does not specify the time for making the demand, the statute permits a trial to be held upon two days' notice after the issues are joined. Paul relies on SDCL 15-6-38(b), which provides an additional ten days to demand a jury trial after the last responsive pleading is filed. However, this Rule is inapplicable because the additional ten days would be inconsistent and in conflict with the timing specified in SDCL 21-16-7 and -8.

[¶34.] Paul did not demand a jury trial within the four days allowed for his appearance and pleading. In these circumstances, the circuit court did not error in concluding that Paul's demand for a jury trial on the day of the scheduled court trial was untimely and, therefore, waived.

### 4. Whether the circuit court abused its discretion when it denied Paul and Skyline's request for a continuance.

[¶35.] After the circuit court made its oral denial of Paul's motions to dismiss, Paul requested a continuance of five days. The circuit court denied the request and continued with the court trial. "A trial court's decision to grant or deny a continuance is reviewed under an abuse of discretion standard." *People ex rel. L.N.*, 2022 S.D. 8, ¶ 41, 970 N.W.2d 531, 544 (citation omitted). "The granting or refusing [of] a continuance rests in the sound discretion of the court below, and its ruling will

not be reversed, except for the most cogent reasons." *Id.* (alteration in original) (citation omitted).

[¶36.] Paul asserts the circuit court abused its discretion because it "did not consider any of the factors relating to motions for continuance." Paul points to our decision in *Meadowland Apartments v. Schumacher*, where we discussed four considerations a court should make when addressing a request for continuance. 2012 S.D. 30, ¶ 17, 813 N.W.2d 618, 623. These considerations include:

> (1) whether the delay resulting from the continuance will be prejudicial to the opposing party; (2) whether the continuance motion was motivated by procrastination, bad planning, dilatory tactics or bad faith on the part of the moving party or his counsel; (3) the prejudice caused to the moving party by the trial court's refusal to grant the continuance; and (4) whether there have been any prior continuances or delays.

*Id.* (citation omitted). In denying the requested continuance, the circuit court reasoned that, "It appears to the Court, that the defendant utilized a tactical procedure such as asking for a continuance, dismissal and brought in issues of compulsory counter claims [sic] and tried to, for lack of a better word, in this Court's opinion, drag other issues into an eviction proceeding that are inappropriate. He utilized that tactic instead of answering the summons and complaint and dealing with the allegations relevant to an eviction procedure." It appears the circuit court was correctly oriented to the appropriate considerations. In these circumstances, we cannot conclude the circuit court abused its discretion in denying the request for a continuance.

**5.** ***Whether the circuit court abused its discretion when it excluded evidence of alleged undue influence and considered information from prior proceedings between the parties.***

[¶37.] Paul claims "[t]he Circuit Court erred by rejecting key evidence [and] considering improper evidence[.]" "We review a circuit court's evidentiary rulings by utilizing a 'two-step process.'" *Sedlacek v. Prussman Contracting, Inc.*, 2020 S.D. 18, ¶ 16, 941 N.W.2d 819, 822 (citation omitted). "First, we 'determine whether the trial court abused its discretion in making an evidentiary ruling.'" *Id.* (citation omitted). "[S]econd, we determine 'whether this error was a *prejudicial error*[.]'" *Id.* (alteration in original) (citation omitted). We have recently clarified the prejudice standard as "a reasonable probability that, but for [the error], the result of the proceeding would have been different." *State v. Carter*, 2023 S.D. 67, ¶ 26, 1 N.W.3d 674, 686 (alteration in original) (citation omitted).

     *a.*   *Exclusion of testimony relating to undue influence*

[¶38.] During the eviction proceeding, Paul attempted to introduce testimonial evidence demonstrating how Kelly had unduly influenced Raymond. The circuit court consistently limited the scope of the FED proceeding. Paul argues "[t]his was an abuse of discretion, because [the court] excluded pertinent information." We disagree.

[¶39.] FED actions are limited in nature and "are intended to prevent protracted litigation by limiting the scope so collateral issues not connected with the question of possession do not burden the proceeding." *LPN Tr.*, 1996 S.D. 97, ¶ 9, 552 N.W.2d at 798. Paul's proffered testimony concerning his claims of undue influence in the transfer of title is irrelevant to this eviction action, where all

putative title holders joined as plaintiffs in support of the eviction. As the circuit court concluded, "[m]uch of the testimony and much of the other issues that were brought into this proceeding or attempted to be brought into this proceeding were completely irrelevant to an eviction proceeding and simply not allowed." The circuit court did not abuse its discretion by excluding evidence of undue influence.

### b. *Extraneous evidence*

[¶40.] Paul also believes the circuit court erred by "injecting extraneous evidence" into the eviction proceeding. During Paul's direct examination, while sustaining an objection, the court said, "I will also comment, that based on my memory, late last fall, Mr. O'Farrell senior testified live in front of me and it's this Court's opinion that some of the testimony now is contrary to what this Court observed." Paul believes this translated into the circuit court's finding of fact 22, which reads: "The Court finds the testimony of Paul O'Farrell to not be credible, when it conflicts with the Findings made by the Court."

[¶41.] Paul first claims this was an error because a "judge cannot make himself a witness." He also believes the circuit court erred by using evidence from a previous proceeding. To that contention, we note that early in the FED hearing, Paul requested the circuit court to take judicial notice of four previous cases involving the parties. When asked to clarify his judicial notice request, Paul stated, "Judge, judicial notice in this sense is not necessarily for the contents of the pleadings but for the existence of these other proceedings taking place and the contents of the file as far as what the litigants are arguing." A review of the record reveals a lack of clarity about the scope and nature of the judicial notice taken by

the circuit court. Ultimately, the circuit court said, "I'll take judicial notice of all those files. And on the record, I'll take judicial notice that there are several things in dispute that the parties are arguing about." For context, it is important to note that the circuit court, *at Paul's request*, took judicial notice of the other related proceedings. Beyond that context, we need not determine the exact scope of the circuit court's judicial notice to resolve this issue.

[¶42.]        Although the circuit court referenced testimony from a prior proceeding, this does not support Paul's contention that the circuit court's determination that Paul was not credible was based solely on the testimony from that prior proceeding. In his testimony during this eviction proceeding, Paul made inconsistent statements that could reasonably support the circuit court's determination that Paul was not a credible witness. The circuit judge heard and observed the witnesses and was best placed to assess their credibility. We perceive no error in the circuit court's credibility assessments.

### 6.    *Whether Paul and Skyline's personal property was subject to forfeiture.*

[¶43.]        Lastly, we must address the relief granted by the circuit court in its judgment. The circuit court granted the eviction and ordered Paul to vacate the Property within ten days of the judgment. But also included within the circuit court's judgment was an order that the Colony "may treat all personal property remaining on the . . . real property . . . as having been abandoned by the Defendants[.]" Paul argues the forfeiture "is not authorized by any statute within Chapter 21-16, nor any other statute that counsel has been able to identify." During its argument before this Court, VOR conceded this point.

[¶44.] The plain reading of the FED statutes does not permit such a forfeiture. No party presented any authority supporting the circuit court's action, and our research has not yielded any support. The circuit court's forfeiture of Paul's personal property was unsupported by law and, therefore, erroneous.

[¶45.] We affirm the eviction but remand with direction to the circuit court to revise the judgment consistent with this decision.

***Motion for attorney's fees***

[¶46.] VOR and the Colony requested appellate attorney fees and filed a joint affidavit itemizing the legal services rendered, seeking $18,382.86. "SDCL 21-16-11 authorizes an award of attorneys' fees for forcible entry and detainer actions[.]" *Arrowhead Ridge I, LLC v. Cold Stone Creamery, Inc.*, 2011 S.D. 38, ¶ 27, 800 N.W.2d 730, 737. We award VOR and the Colony combined appellate attorney fees of $9,000.

[¶47.] JENSEN, Chief Justice, and SALTER, Justice, concur.

[¶48.] KERN and DEVANEY, Justices, concur in part and dissent in part.

DEVANEY, Justice (concurring in part and dissenting in part).

[¶49.] I agree with the determination in the majority opinion that the forfeiture of Paul's personal property is not supported by law and would affirm on that issue. I also agree that a motion to dismiss may be filed in an action brought under SDCL chapter 21-16 (FED action). However, I respectfully disagree with other determinations in the majority opinion. In my view, the circuit court erred at the outset when concluding the FED action was not a compulsory counterclaim and

abused its discretion in denying the motion for a continuance and in its rulings related to the evidentiary issues discussed below.

*Compulsory counterclaim*

[¶50.] To properly assess the counterclaim issue, a full consideration of the underlying allegations in the lawsuits preexisting this FED action is necessary. The first lawsuit was commenced in June 2022. In that action, Victoria sued Raymond and their son Kelly (Victoria's lawsuit), claiming that Raymond lacked capacity and was the subject of undue influence by Kelly. Her complaint alleged that Raymond breached his fiduciary duty when he took certain actions relating to assets held by the Trust and VOR. In particular, Victoria alleged that Raymond wrongfully and/or without capacity transferred 50% of their jointly assigned VOR shares out of the Trust and assigned them to himself, then signed an instrument, as a Trustee and shareholder, to remove Victoria as a director of VOR. Victoria sought declaratory and injunctive relief to rescind Raymond's actions and to preclude him from transferring any shares of VOR out of the Trust and to preclude Raymond and Kelly "from taking further actions as purported directors of VOR." The alleged improper actions by Raymond and Kelly occurred while Victoria was hospitalized and recovering from surgeries, and she died on July 11, 2022, prior to her claims being decided.

[¶51.] After Victoria's death, but while her lawsuit against Raymond was still pending, Raymond filed a petition on July 18, 2022, seeking to be appointed as special administrator of Victoria's estate without notice or a hearing, and he was appointed as such the same day. On September 26, 2022, Paul filed a petition

requesting the removal of Raymond as the special administrator of Victoria's estate and a petition requesting that he be appointed as the special administrator. Paul asserted that Raymond had a conflict of interest given Victoria's pending lawsuit against him and further claimed that Raymond would not act in the best interest of Victoria's estate. A hearing on Paul's petitions was set for October 18, 2022.

[¶52.] Meanwhile, on August 12, 2022, Raymond, acting on behalf of VOR, entered into a purchase agreement to sell the Property at issue in this appeal to the Colony, with a December 2022 closing date. The agreement was contingent on the eviction of Paul from the house and building sites on the Property and the termination of Skyline's current crop and pasture leases. In accord with these terms, VOR sent Paul and Skyline notices of termination and nonrenewal of the existing leases via letters dated August 18, 2022.

[¶53.] Paul and Skyline thereafter filed a complaint on March 3, 2023, naming Kelly, the Colony, and the Trust as defendants. Relevant here, this lawsuit sought a declaration that Skyline was lawfully permitted to continue farming the Property for the 2023 crop season, and also sought rescission of the sale of the land to the Colony (declaratory/rescission action). In support of these requests, Paul alleged that starting in March 2022, Kelly manipulated Raymond "to set in motion an improper and illegal set of maneuvers" related to the Trust and corporate assets. Paul asserted that various corporate actions of VOR occurring prior to Victoria's death "were taken by attempting to 'vote' Victoria's stock shares on her behalf . . . without her knowledge . . . even after she disavowed such attempts." Such actions culminated in the August 2022 sale of the Property to the Colony and the related

notice of termination and nonrenewal of Paul and Skyline's leases. Paul alleged "Raymond's consent for these transactions was procured via undue influence, or without his full understanding, and without following necessary corporate formalities." Particularly important to the issues in this appeal, Paul alleged that VOR "failed to issue a legally effective termination notice" as to the lease of the Property and that VOR's attempts to non-renew his and Skyline's leases were carried out without proper authority.[3]

[¶54.] On April 5, 2023, VOR filed an answer to Paul and Skyline's complaint and asserted two counterclaims (tortious interference with contractual rights and barratry) against Paul. Rather than including a counterclaim seeking a declaration that Skyline's oral lease was properly terminated and an order requiring Skyline and Paul to vacate the Property, VOR and the Colony filed this FED action by complaint served upon Paul and Skyline on April 17, 2023, seeking immediate possession of the property via the summary procedure outlined in SDCL chapter 21-16.

[¶55.] Paul moved to dismiss the FED action, asserting, inter alia, that the claims raised in the FED action should have been asserted as a compulsory counterclaim in the preexisting declaratory/rescission action. Paul contends the circuit court should have dismissed the FED action or, in the alternative, stayed the action until the matters at issue in his preexisting action were resolved. He notes

---

3. On March 8, 2023, Paul also filed a petition for appointment of guardian and conservator for Raymond, alleging Raymond lacked capacity and was being unduly influenced by Kelly. Paul further alleged that Kelly's improper influence resulted in Raymond "enter[ing] into a secret agreement to purportedly sell nine parcels of family farm ground to [Grand Valley]."

that in that action, he and Skyline have asserted that the title to the Property was improperly conveyed, that VOR "failed to issue a legally effective termination notice," and that Skyline has the right to continue farming the Property. Paul therefore contends that he and Skyline have asserted "inverse, identical claims that the Landlord seeks to bring in this eviction action."

[¶56.] The majority opinion concludes that the Colony and VOR's eviction claim is not a compulsory counterclaim, and in doing so, focuses primarily on the claims in Paul and Skyline's lawsuit relating to questions of title. After initially acknowledging that this lawsuit sought "a declaration that Skyline is legally entitled to continue farming the property at issue[,]" the majority opinion later inconsistently states that this lawsuit "did not involve any dispute about who had the right to the immediate possession of the Property." Even the Colony and VOR, in their appellate brief, acknowledge that Paul and Skyline's lawsuit sought the right to continue farming the property and to keep living on the residential property. Based on this undisputed fact, the factors relevant to whether a claim is a compulsory counterclaim support a conclusion that the Colony and VOR's claimed right to immediate possession is a compulsory counterclaim that should have been raised in the existing civil lawsuit.

[¶57.] The statute governing compulsory counterclaims provides, in relevant part, "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's

claim[.]"[4] SDCL 15-6-13(a). This Court explained in *Olawsky v. Clausen* the four standards that are considered in determining whether a claim is compulsory:

> 1) Are the issues of fact and law raised by the claim and counterclaim largely the same?
>
> 2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?
>
> 3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?
>
> 4) Is there any logical relation between the claim and the counterclaim?

87 S.D. 578, 581, 212 N.W.2d 653, 654 (1973).

[¶58.] While an "affirmative answer to any one of these standards posed would mean that the counterclaim is compulsory[,]" the Court noted in *Olawsky* that the fourth standard is "preferred." *Id.* (other citations omitted). We further noted the United States Supreme Court's explanation of the "logical relation" standard:

> "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the

---

4. SDCL 15-6-13(a) further states that a counterclaim need not be pled if:

> (1) At the time the action was commenced the claim was the subject of another pending action; or
>
> (2) The opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under § 15-6-13; or
>
> (3) If the claim is not one over which the court would have jurisdiction if brought as an original action.

None of these circumstances are present in this case.

> immediateness of their connection as upon their logical relationship. * * * Essential facts alleged by appellant (plaintiff) enter into and constitute in part the cause of action set forth in the counterclaim. That they are not precisely identical, or that the counterclaim embraces additional allegations * * * does not matter. To hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiff rarely, if ever, are, in all particulars, the same as those constituting the defendant's counterclaim."

*Id.* at 581–82, 212 N.W.2d at 654–55 (quoting *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S. Ct. 367, 371, 70 L. Ed. 750 (1926)). We then observed that "the objective of the rule is the settlement of all 'logically related' disputes between the parties in a single lawsuit." *Id.* at 582, 212 N.W.2d at 655.

[¶59.] Paul contends the Colony and VOR's claims in the FED action are "directly and logically related" to his claims in the declaratory/rescission action challenging the corporate actions taken by Raymond on behalf of VOR, which culminated in the sale of the Property and the related attempt to terminate Skyline's lease. In response, the Colony and VOR do not address the compulsory counterclaim standards in their appellate brief. Instead, they argue that the purposes of SDCL chapter 21-16 would be subverted if the Court were to apply SDCL 15-6-13 and require the possession dispute to be tried as a counterclaim in Paul's lawsuit.

[¶60.] It is true that an action under SDCL 21-16-4 "cannot be brought in connection with any other except for rents and profits or damages but the plaintiff may bring separate actions for the same[.]" However, while this statute does not require plaintiffs to assert all of their related claims *within a proceeding commenced under SDCL 21-16-4,* it does not govern whether a landlord or property owner's

claimed right to immediate possession of property must be asserted as a compulsory counterclaim in a preexisting civil proceeding involving an inverse claim. Also, nothing in SDCL chapter 21-16 requires defendants in FED actions to forego a claim to immediate possession they had asserted in a preexisting lawsuit.

[¶61.]     This Court has previously addressed what issues can be considered in a FED action, and when a FED action should yield to another action. In *Heiser v. Rodway*, we held that "inquiry may be made into equitable considerations in an unlawful detainer action, as long as those considerations are relevant to the right of possession." 247 N.W.2d 65, 68 (S.D. 1976). We then explained that "[t]he fusion of the practice and procedure in suits at law and in equity accomplished by the Civil Practice Act is, in our opinion, sufficient to permit necessary equitable relief in these proceedings, rather than to force upon defendants a separate proceeding where the same relief will be forthcoming." *Id.* (citation omitted). Accordingly, we held that "evidence pertinent to the issue of possession is properly admissible in an unlawful detainer action, even though the evidence is equitable in nature." *Id.*

[¶62.]     In *LPN Trust v. Farrar Outdoor Advertising, Inc.*, 1996 S.D. 97, 552 N.W.2d 796, the Court considered whether the trial court erred by joining a FED action with an action seeking a reformation of the lease at issue. In affirming the joinder of such actions, the Court reiterated that some "inquiry may be made into equitable considerations in an unlawful detainer action, as long as those considerations are relevant to the *right of possession*." *Id.* ¶ 9, 552 N.W.2d at 798 (emphasis added) (quoting *Heiser*, 247 N.W.2d at 68). *See also Rindal v. Sohler*, 2003 S.D. 24, ¶ 9, 658 N.W.2d 769, 772 (noting that although FED actions provide a

summary remedy for possession of real property, courts hearing such actions "should also hear other relevant matters to avoid a multiplicity of suits").

[¶63.] The issues relating to the sale of the Property and the related termination of Paul and Skyline's leases raised in Paul's declaratory/rescission action are logically related and unquestionably relevant to the determination in the FED action as to which party is entitled to immediate possession of the Property. The Colony and VOR argue, however, that they should not be required to litigate their right to possession in Paul's complex lawsuit because FED actions are "intended to prevent protracted litigation."

[¶64.] While FED actions are intended to be swift, we have also recognized that there are circumstances, such as disagreement over title and right to possession of the property at issue, that make the expediency of a FED action secondary. In *Raich v. Weisman,* 57 S.D. 182, 231 N.W. 897 (1930) (*Raich I*), the Court considered the interplay of multiple actions involving a dispute over title and possession of property. Raich claimed title and right of possession via a sheriff's deed she obtained as a redemptioner from the foreclosure of a first mortgage on the property at issue. *Id.* at 898. Weisman, the mortgagor of two mortgages on the property and the person in possession of the property, claimed the second mortgage was fraudulent and given without consideration and believed that she was, therefore, the title holder.

[¶65.] The procedural history of this dispute is complicated. Weisman first filed an action seeking to cancel the mortgage. Raich intervened in Weisman's action, and thereafter redeemed the first mortgage and obtained the sheriff's deed.

Raich then filed an action for forcible entry and detainer against Weisman. In her answer, Weisman claimed title to the property. The FED action was decided in Raich's favor, and while the appeal was pending, Raich filed an action to quiet title. *See id.*

[¶66.] On appeal, Weisman argued the FED action should have been dismissed so that the other pending actions could "be consolidated and the broader issues tried." The Court initially disagreed, stating, it "is not the province of this court to reverse a judgment and dismiss the action because there are other actions pending in the lower court which may, if tried, afford more complete relief to litigants." *See id.*

[¶67.] On a motion for rehearing, however, the Court reversed course, stating:

> [W]e are convinced that the issues ought to be tried in those actions with the issue here involved. This being a strictly law action in forcible entry and detainer, it can only determine the right of possession of the property as of the date of the commencement of the action, and involves only the then legal title. As a proceeding to determine the real issues between the parties, it is inadequate, and a final judgment here can only complicate the other issues. Comparatively simple issues have become tangled in a multiplicity of suits, and, if this court can straighten the matter out and permit the entire matter to be litigated in one action before a court of competent jurisdiction, it should be done.

*Raich v. Weisman,* 58 S.D. 4, 234 N.W. 664, 665 (1931) (*Raich II*). At the time the *Raich* cases were decided, there were courts of limited jurisdiction that could only hear matters of law but not equitable claims. The Court thus "direct[ed] a dismissal of [the FED] action in order that those issues may be tried and determined in a court of equity either in one action or a consolidation of those pending." *Id.*

[¶68.]     After the distinction between actions at law and suits in equity was later abolished, *see* SDCL 15-6-2, this Court, in *Heiser*, recognized that although FED actions are "designed as a speedy remedy to provide possession rightfully entitled to it" and to "prevent protracted litigation," the consideration of other matters related to possession was paramount. *See* 247 N.W.2d at 67–68. We concluded the "right . . . to be heard on relevant matters, . . . as well as the desirable purpose of preventing a multiplicity of suits, is, and must be, superior to the desire to provide a speedy remedy for possession."[5] *Id.* at 68 (citation omitted). *Heiser* did not, however, involve a scenario in which there was already another existing lawsuit seeking a declaration as to the right to immediate possession of the property at issue in a later-filed FED action. Thus, there was no compulsory counterclaim issue before the Court.

[¶69.]     The majority opinion attempts to distinguish *Heiser* on the basis that the tenant there claimed the existence of an oral lease entitling him to possession. *Heiser*, 247 N.W.2d at 66. But the existence of an oral lease is the same claim that Paul and Skyline have made in this case and the right to immediate possession of the Property is also at the forefront of their preexisting declaratory/rescission

---

5.     In *Heiser*, the Court noted that due to the summary nature of FED actions, questions of title, which could present many collateral issues, should not be settled in FED actions. 247 N.W.2d at 68 n.2. The Court further noted that the question of title may not be relevant to the issue of possession at the time in question. *Id.* Here, while neither Paul nor Skyline are claiming that they hold current title to the Property, they are challenging the validity of the termination of their leases and claiming the right to maintain immediate possession of the Property.

action.[6] The further attempt to distinguish this case from *Heiser* and *LPN Trust* by suggesting that Paul and Skyline are only claiming "that they *should* have a lease" likewise fails to comport with the record. Paul and Skyline have maintained in both their preexisting lawsuit and in this eviction action that their existing oral lease was not validly terminated by VOR. This was the basis for their request in the declaratory/rescission action for a determination that Skyline was the rightful tenant of the Property and that Paul is legally permitted to continue occupying the residential and nonagricultural parts of the Property.

[¶70.] Because there is a "logical relation" between Paul's declaratory/recission action and the Colony's and VOR's claim to immediate possession in the FED action, such claim should have been asserted as a compulsory counterclaim in the existing lawsuit. *See Olawsky*, 212 N.W.2d at 654. Doing so would certainly fulfill the objective of the compulsory counterclaim rule—"the settlement of all 'logically related' disputes between the parties in a single lawsuit.'" *Id.* at 655. In *Olawsky*, after determining that the plaintiffs' alleged breach of contract was a compulsory counterclaim in the defendants' prior action to rescind the contract, the Court held that defendants were "precluded from maintaining any independent action." 212 N.W.2d at 655. I would reach the same conclusion here

---

6. The complaint in the declaratory/rescission action states, inter alia, "Skyline Cattle Company seeks an immediate declaration that it is the rightful tenant for the 2023 crop season" and alleges "Plaintiff Paul O'Farrell is entitled to a declaration that he is legally permitted to continue occupying the premises of the Family Trust Land, including residential and non-agricultural land and buildings which are the site of his home and shop."

and find that the circuit court erred in denying Paul's motion to dismiss the FED action on this basis.[7]

[¶71.] But even if VOR and the Colony were not required to assert their right to immediate possession of the property as a compulsory counterclaim in Paul's preexisting lawsuit, Paul and Skyline's alternative request that the circuit court stay the FED action to allow this underlying dispute to be resolved in the preexisting lawsuit is also supported by the Court's ruling in *Raich II*. In that case, the Court directed that Raich's FED action be dismissed *without prejudice* and further noted alternative ways of avoiding piecemeal litigation, stating that the underlying issues may be resolved either in one action or a consolidation of those pending. *Raich II*, 234 N.W. at 665. Other courts presented with similar scenarios have stayed eviction proceedings to allow the underlying disputed issues of the parties to be properly addressed in another pending action. *See Bjorklund v. Bjorklund Trucking, Inc.*, 753 N.W.2d 312, 318–19 (Minn. Ct. App. 2008) (holding that "when the counterclaims and defenses are necessary to a fair determination of the eviction action, it is an abuse of discretion not to grant a stay of the eviction proceedings when an alternate civil action that involves those counterclaims and defenses is pending."); *see also William Weisman Holding Co. v. Miller*, 188 N.W.

7. Notably, despite its rejection of Paul's argument on the compulsory counterclaim issue raised in the FED action, the circuit court, when later issuing a Rule 54(b) certification and judgment dismissing Paul and Skyline's claims in the preexisting civil action stated that "Paul's claim for rescission practically mirrors the eviction action" and noted that "principles of judicial economy suggest that these two issues should be handled at the same time before [this] Court." This judgment was recently vacated, for other reasons, in *Estate of O'Farrell v. Grand Valley Hutterian Brethren, Inc.*, 2024 S.D. 81, ___ N.W.3d ___.

732, 733 (Minn. 1922) (holding that "the court in which the equitable action is pending may enjoin the prosecution of the unlawful detainer action if it be shown that the equitable rights of the defendant in that action are such that he ought not to be ousted from possession.").

[¶72.] In any event, it is clear under our governing case law that Paul and Skyline were entitled to fully litigate their challenge to the termination of their oral lease of the Property in some forum. At the very least, they were entitled to do so within this FED action. However, they were not afforded that opportunity here, based on the other improper rulings by the circuit court addressed below.

*Denial of the Continuance Motion*

[¶73.] After Paul filed his motion to dismiss on April 21, VOR and the Colony filed a notice on April 24 of a court trial to be held on April 27. Prior to hearing any oral argument on the motion, the circuit court advised the parties, via an email on April 26, that it would be denying the motion to dismiss but would allow counsel for Paul and Skyline "to make a record" on their motions at the court trial scheduled the next day. When the parties appeared before the court on April 27, the court formally denied the motion to dismiss on the record. Paul then requested a continuance under SDCL 21-16-7. The circuit court denied this request and ordered the parties to proceed with the court trial that day.

[¶74.] The majority opinion, citing the *Meadowland* factors that a court is to consider when ruling on a motion for continuance, *see* 2012 S.D. 30, ¶ 17, 813 N.W.2d at 623, concludes the circuit court did not abuse its discretion in denying Paul's motion for continuance, stating the circuit court was correctly oriented to the

appropriate considerations. I disagree. The circuit court focused on just one of the factors, concluding "the defendant utilized a tactical procedure such as asking for a continuance, dismissal and brought in issues of compulsory counter claims [sic] and tried to, for lack of a better word, in this Court's opinion, drag other issues into an eviction proceeding that are inappropriate." The circuit court's basis for denying the continuance was erroneous because the "other issues" the court found Paul attempted to "drag" into the FED action were directly related to Paul and Skyline's asserted right to immediate possession. Under our governing case law, Paul and Skyline had a right to be heard on those issues, which in this particular case, were complex and warranted a continuance. *See Heiser*, 247 N.W.2d at 68.

[¶75.] Further, the FED statutes themselves allow for a continuance of up to 14 days *or longer* upon payment of "an undertaking to the plaintiff with good and sufficient surety to be approved by the court. . . ." SDCL 21-16-7. Therefore, any suggestion that FED actions must be resolved at the lightning-speed pace in which this one was resolved is contrary to the governing statutes. Here, Paul requested a continuance of just five days and also offered, in accord with this statute, to "make an undertaking with adequate security" to support a motion for a longer continuance. In my view, the circuit court failed to apply the governing law to the scenario presented and, therefore, abused its discretion in denying the continuance.

*Evidentiary Issues*

[¶76.] Paul further contends the circuit court abused its discretion in excluding evidence at the eviction trial relating to Raymond's allegedly invalid actions that led to the sale and termination of the oral lease of the Property at issue.

Relying on *LPN Trust*, 1996 S.D. 97, ¶ 9, 552 N.W.2d at 798, the majority opinion concludes the circuit court did not abuse its discretion in excluding this evidence because FED actions are limited and intended to prevent protracted litigation so that "collateral issues not connected with the question of possession do not burden the proceeding."

[¶77.]    However, this conclusion does not take into account this Court's prior holdings that expediency must give way when there exists a dispute as to who is entitled to immediate possession, as we expressed in *LPN Trust* and *Heiser*. *See id.* (noting that "inquiry may be made into equitable considerations in an unlawful detainer action, as long as those considerations are relevant to the right of possession"); *Heiser*, 247 N.W.2d at 68 (acknowledging that allowing evidence of equitable issues even on a limited basis may interfere with the summary nature of the remedy, but concluding "that [such] interference is warranted"). Here, Paul was entitled to put on testimony to support his claim that the termination of the existing leases was unauthorized and improper, but the circuit court continued to sustain objections to testimony Paul attempted to present related to this issue. In my view, this was an abuse of discretion.

[¶78.]    I would also conclude the circuit court erred as a matter of law to the extent it relied on testimony regarding disputed facts provided in hearings in the other pending actions when rendering its findings. In declining to find error on this issue, the majority opinion notes that the circuit court took judicial notice of the other proceedings at Paul's request. However, a review of the transcript reveals that Paul requested the court take judicial notice of the *existence of* the other

proceedings and the parties' claims therein. Paul did not ask the court to take judicial notice of any testimony. Of particular concern here, the testimony the circuit court appears to have been referring to occurred in a prior proceeding in which the hearing was cut short and Paul was prevented from fully presenting his evidence. Moreover, the circuit court then issued its ruling on the pending matter at this prior hearing, even though the court had advised the parties that it would not do so.[8]

[¶79.] The circuit court's rulings have effectively precluded Paul and Skyline from fully and fairly litigating the issue of who has the right to immediate possession of this Property. I would therefore reverse the above-mentioned rulings by the circuit court, vacate the judgment and order entered in this case, and remand for the entry of an order either dismissing the FED action or, in the alternative, holding it in abeyance until the underlying issues relevant to the right to immediate possession of the Property are resolved in Paul and Skyline's preexisting lawsuit.

[¶80.] KERN, Justice, joins this writing.

---

8. The testimony the circuit court appears to have referred to was during a hearing on Paul's motion to intervene in Victoria's action, *O'Farrell v. O'Farrell*, 25CIV22-000038, an action that was later dismissed without prejudice by Victoria's counsel.